STATE v. CHASTIAN.

DISPENSARY LAW—CRIMINAL LAW.—Under the dispensary law of 1896, it is a criminal offense to keep whiskey, for personal use, without having fixed on the vessels containing it labels obtained from the state commissioner. *Divided Court.*

Before TOWNSEND, J., Oconee, July, 1896. Affirmed.

Indictment against Anderson Chastian for unlawfully storing and keeping alcoholic contraband liquor. Defendant was convicted, and appeals.

The trial Judge charged the jury as follows:

The indictment is for storing and keeping in possession alcoholic liquors. The law is so plain that I don't see that I need detain you about it. It is written in black and white. If a man undertakes to keep liquor, it must have the stamp of the state commissioner. If he is going to keep dispensary liquor, it is usually bought in dispensary packages, and has the stamps on it. If he is going to deal in blind tiger liquor, he must get stamps and put on it. The law is as plain as "A B C," and, like all statutory law, is plain and to the point. It is no use for me to detain you about it. You have heard the testimony. The question is: Did he have liquor there, keeping it there without any stamps on it? If so, he must show that he had bought it through the regular channel, the dispensary, or that he obtained from the state commissioner the proper stamps to put on it. The law provides how he shall do it. The law

prevents this storing and keeping in possession liquors, shows how it may be kept safely and without any trouble. And if a man is not minded to put himself to that trouble, then he will have to look out for the consequences. But matters of fact are for you. You must determine whether it is so or not, so far as the facts are concerned. The law is here, and we have got to abide by it. It don't make any difference whether it is wise or not. That is not the point with sworn officers. If you have any reasonable doubt as to the guilt of the defendant, give him the benefit of it.

*Messrs. Jaynes & Shelor*, for appellant, cite: Dispensary law of 1896; 14 S. C., 104; 18 Ohio, 462.

*Mr. Solicitor Ansel*, contra. (No written argument.)

April 7, 1897. The first opinion was delivered by

MR. CHIEF JUSTICE McIVER. Under an indictment charging that the defendant, on the 15th day of June, 1896, "did unlawfully store and keep in possession, within this State, certain alcoholic contraband liquor, to wit: about two and one-half gallons of corn whiskey, which is used as a beverage, against the form of the act," &c., the defendant was found guilty, and sentenced "to pay a fine of $100, or be held to labor upon the public works of Oconee County for a period of three months, or be confined in the State penitentiary, at hard labor, for a period of three months." From this judgment defendant appeals, upon the following grounds: "I. Because his Honor erred in charging the jury as follows: 'The question is, did he have liquor there, keeping it there without any stamps on it? If so, he must show that he either bought it through the regular channel, the dispensary, or that he obtained from the state commissioner the proper stamps to be put on it;' and should have charged the jury instead thereof that the keeping of a small quantity of liquor by a person in his dwelling house, for his own personal use, and not to be bartered, sold or given away, does not constitute a crime, which is the subject of indictment.

II. That it is only the storing or keeping in possession of alcoholic liquor for some unlawful use or purpose which is made an indictable offense by the statute, and his Honor erred in not so holding."

It appears from the testimony of the state constables, who were examined as witnesses for the State, that they found in the dwelling house of the defendant, while he was absent therefrom, a three-gallon jug, containing about two gallons of corn whiskey, as they estimated, which they seized and shipped to the state commissioner, because there were no marks or stamps upon it obtained from the state commissioner. There was no testimony tending to show that defendant had the whiskey for sale or any other unlawful purpose, or that defendant ever had sold or disposed of any whiskey. On the contrary, the defendant testified that he obtained from a man, who said it came from Rabun, a gallon of whiskey, about three weeks before the seizure, for his own personal use, and for no other purpose, because he was in bad health and needed it; that he never sold any whiskey, and he could not tell how much of the whiskey he had used before the seizure. He admitted that the whiskey had not been bought from any dispensary, and that it had no stamps upon it. The charge of the Circuit Judge, which is fully set out in the "Case," and should be incorporated by the reporter in his report of the case, was, in substance, as follows: "The indictment is for storing and keeping in possession alcoholic liquors. * * * If a man undertakes to keep liquor, it must have the stamp of the state commissioner. * * * The question is, did he have liquor there, keeping it there without any stamps on it? If so, he must show that he had bought it through the regular channel, the dispensary, or that he obtained from the state commissioner the proper stamps to put on it. The law provides how he shall do it. The law prevents this storing and keeping in possession of liquors, shows how it may be kept safely and without any trouble. And if a man is not minded to put himself to that trouble, then he

will have to look out for the consequences." The Circuit Judge manifestly, in charging the jury, proceeded upon the theory that it is an indictable offense for a person to have in his possession alcoholic liquors, even for his own use, unless the required stamps are upon it, or rather upon the vessel containing it. In the first place, the indictment does not charge any such offense, for it does not charge that alcoholic liquors were found in the possession of the defendant without the requisite stamps. On the contrary, the charge in the indictment, as we have seen, is that the defendant "did unlawfully store and keep in possession, within this State, certain alcoholic contraband liquor;" and, in the second place, a careful examination of the act of 6th March, 1896 (22 Stat., 123), commonly called the dispensary law, under which this prosecution was instituted, fails to disclose any provision therein making it an *indictable* offense for a person to have in his possession alcoholic liquors without the stamps of the state commissioner. There are several provisions in that act making such liquors liable to seizure and forfeiture, but none declaring that the mere fact that a person is found in possession of alcoholic liquors without stamps shall constitute a criminal offense. The sections of the act which, it is contended, sustain this prosecution are the first, the twenty-fifth, the twenty-sixth, and the thirty-fifth, and these sections will be considered in their order. The first section reads as follows: "That the manufacture, sale, barter or exchange, receipt or acceptance, for unlawful use, delivery, storing, and keeping in possession, within this State, of any spirituous, malt, vinous, fermented, brewed (whether lager or rice beer) or other liquor, any compound or mixture thereof, by whatever name called or known, which contains alcohol, and is used as a beverage, by any person, firm or corporation; the transportation, removal, the taking from the depot or other place by consignee or other person, or the payment of freight or express or other charges by any person, firm, association or corporation upon any spirituous,

malt, vinous, fermented, brewed (whether lager, rice or other beer) or other liquor, or any compound or mixture thereof, by whatever name called or known, which contains alcohol, and is used as a beverage, except as is hereinafter provided, is hereby prohibited, under a penalty of not less than three (3) nor more than twelve (12) months at hard labor in the State penitentiary, or pay a fine of not less than $100 nor more than $500, or both fine and imprisonment, in the discretion of the Court, for each offense. All such liquors, except when bought of a State officer authorized to sell the same, or in possession of one, and having been duly tested by the chemist of the South Carolina College and found to be chemically pure, are declared to be contraband and against the morals, good health, and safety of the State; and all alcoholic liquors in this State, and not having been tested by the chemist of the South Carolina College and found to be chemically pure, are hereby declared to be of a poisonous and detrimental character, and their use and consumption as a beverage are against the morals, good health, and safety of the State, and all such liquors may be seized wherever found, without a warrant, and turned over to the state commissioner." It will be observed that this section is divided into two distinct and different parts, manifestly designed to effect two distinct and different purposes. The first part, embraced in the first sentence, was designed to make it a penal offense, punishable as therein prescribed, for any person to do any of the acts therein forbidden;. while the second part, embraced in the second sentence, separated by a period from the first sentence, was clearly designed to render the liquors therein referred to liable to seizure, without a warrant, and to forfeiture. In other words, the first sentence affects persons only, and not property, while the second sentence affects property only, and not persons. It is clear, therefore, that, in this case, our attention must be confined to the first sentence, as no question as to the seizure or forfeiture of property is here involved. The first sentence, however, does

forbid, under a penalty therein prescribed, the manufacture, sale, barter or exchange, receipt or acceptance, for unlawful use, delivery, storing, and keeping in possession, within this State, of any spirituous liquors by any person; and also forbids, under a like penalty, the transportation, removal or taking from the depot or other place of such liquors, or paying the freight or charges thereon, except as is thereinafter provided. In order, therefore, to constitute any of the offenses therein denounced, it must appear that the person charged has manufactured, sold, bartered, exchanged, received or accepted, delivered, stored or kept in his possession, within this State, any spirituous liquors *"for unlawful use;"* or that such person has transported, removed or taken from the depot, or other place, such liquors, or paid the freight or charges on the same, except as is thereinafter provided. It is clear that the person charged must not only have manufactured, sold, bartered, exchanged, received or accepted, delivered, stored or kept in his possession spirituous liquors, but must have done so for some *unlawful use;* for that is not only the proper grammatical construction of the language used, but, also, such a construction is necessary to relieve the officers charged with the duty of storing, keeping, and selling spirituous liquors from the penalty prescribed for so doing. But, even if there is error in holding that the words "for unlawful use" qualify all of the acts forbidden by the first section of the act, it is absolutely necessary to hold that those words do qualify the act of keeping in possession spirituous liquors for one's own use, in order to prevent a conflict between section 1 and other sections of the act, as is conclusively shown in the separate opinion of Mr. Justice Gary. It is not necessary to consider the other branch of the first sentence, which makes it a penal offense for any person to transport, remove or take from the depot, or other place of deposit, any spirituous liquors, or to pay the freight or other charges on the same, except as afterwards provided, for there is no allegation or pretense that the defendant did anything of the kind.

While the evidence shows that the liquor here in question was kept in the defendant's dwelling house, there is no evidence even tending to show that it was received or kept for any unlawful use. On the contrary, the only evidence as to that matter is, that the liquor was obtained and kept for the defendant's own personal use, he believing that it was necessary for his bodily health. Unless, therefore, the act contains some provision making it unlawful for a person to drink, or otherwise use for his own personal benefit or gratification, any spirituous liquors not obtained from the dispensary, or not containing the stamps of the state commissioner, it is obvious that one essential element of the offense created by the first section of the act is lacking. The act will be searched in vain for any such provision, and hence it cannot be said that keeping and using any spirituous liquors for one's own personal benefit or gratification constitutes any offense against the criminal laws of this State.

The next section to be considered is the twenty-fifth, which reads as follows: "That any of the liquors set forth in section one (1) of this act, which are contraband, may be seized and taken without warrant by any constable, sheriff or policeman, while in transit or after arrival, whether in possession of a common carrier, depot agent, express agent, private person, firm, corporation or association, and reported to the state commissioner at once, who shall dispose of the same as hereinafter provided: Provided, that liquors purchased outside the State, owned and conveyed as personal baggage, shall be exempt from seizure, when the quantity does not exceed one gallon." It is very obvious that this section does not even purport to create any criminal offense, but deals only with the seizure and forfeiture of contraband liquors. Indeed, the proviso in terms recognizes the legality of the possession of certain spirtuous liquors, which are not bought from the dispensary, and which do not contain the stamps of the state commissioner.

The next section of the act which is relied upon by the prosecution, is the twenty-sixth, which reads as follows:

12—49

"That the possession of said illicit liquors is hereby prohibited and declared unlawful, and any obligation, note of indebtedness, contracted in their sale or transportation, is declared to be absolutely null and void; nor shall any action or suit for the recovery of the same be entertained in any Court in this State." It is very manifest that the sole purpose of this section was *not* to create any criminal offense, but simply to prevent the Courts of this State from entertaining any action for the recovery of the price of any illicit liquors. Besides, the language used in this section shows that the possession herein referred to is that prohibited by section one of the act—keeping in possession for some *unlawful use*—for the words are, "possession of *said* illicit liquors"—that is, the liquors mentioned in the next preceding section, which, in express terms, refers to section one of the act.

The only remaining section relied upon by counsel for the prosecution, is the thirty-fifth, so much of which as is pertinent to this case reads as follows: "That in case of conviction of violations of any of the sections of this act, where punishment is not especially provided for, the person or persons or corporations so convicted shall be punished in the discretion of the Court trying the same. All alcoholic liquors, other than domestic wine, which do not have on the packages in which they are contained the label and certificates going to show that they have been tested by the chemist and purchased from a State officer authorized to sell them, are hereby declared contraband, and on seizure will be forfeited to the State, as provided in section thirty-one: Provided, that this section shall not apply to liquor held by the owners of registered stills in bonded warehouses. Persons having liquor which they wish to keep for their own use may throw the protection of the law around the same, by furnishing an inventory of the quantity and kinds to the state commissioner, and applying for certificates to affix thereto." It is difficult to perceive what light this section throws upon the question under consideration. It

certainly creates no criminal offense, except in the last par-
agraph, which has not been quoted, for the reason that it
relates solely to the offense of affixing imitation stamps to
packages containing alcoholic liquor—a matter clearly not
pertinent to this case.    The first sentence of the first para-
graph, which has been quoted, provides what shall be the
punishment for offenses against the act, where the punish-
ment has not been especially prescribed, and the remainder
of that paragraph is devoted, first, to a declaration of what
shall be regarded as contraband liquor, and, second, to the
mode by which such liquor may be protected from seizure
and forfeiture.    Indeed, the provision in the last sentence
of the first paragraph of the section affords the strongest
kind of implication that the legislature never intended that
any person should be liable to indictment for having in his
possession any spirituous liquors for his own use, even
though it should be contraband liquor, as defined in the
next preceding sentence, for it declares that: "Persons
having liquor which they wish to keep for their own use
may throw the protection of the law around the same," by
pursuing the mode there prescribed; and it would be very
unreasonable to suppose that the legislature intended that
it should be a criminal offense for a person to have contra-
band liquor in his passession for his own use, when express
provision had been made for the protection of such liquor
from seizure and forfeiture; for the protection afforded by
this provision *is to the liquor—not to the person* who has it
in possession for his own use—the language being that
"Persons having liquor which they wish to keep for their
own use may throw the protection of the law around *the
same,*" &c.    This negatives the idea of any intention to
make it a criminal offense for a person to have in his pos-
session contraband liquor for his own use; and for that rea-
son such person needed no protection, but the liquor did
need protection, for, under other provisions of the act, it
was liable to seizure and forfeiture wherever found, and
accordingly provision was made for such protection.

It is contended, however, that under the provision of section 26, above set forth, that the mere possession of any contraband liquor, or as it is there called, illicit liquor, is a criminal offense, because such possession is there declared to be unlawful, and though no special punishment is there provided for, yet it is punishable, at the discretion of the Court, under the provision contained in the first sentence of section 35, hereinabove quoted. It is quite certain that such possession is not, in section 26, declared to be an offense against the criminal law, and, as has been said above, the whole tenor of that section negatives any such idea. The mere fact that such possession is declared to be unlawful does not make it a criminal offense, though it may make the liquor liable to seizure and forfeiture, and hence the section goes on to provide that the person in whose possession the liquor is found shall not be liable to any action for the recovery of the price of the same. There are many things which are unlawful and which are not offenses against the criminal law. For example, a person found in possession of a horse, under a claim of right, but which proves to be the property of another, is unlawfully in possession of the horse, but he has not thereby committed any offense against the criminal law. Many other illustrations might be used. It would certainly be necessary to strain the language of section 26 far beyond the well settled rule that penal statutes must be strictly construed, to hold that the language used in that section was intended to create a criminal offense.

A very careful consideration of this case, in all its aspects, leads inevitably to the conclusion that the grounds of appeal must be sustained. Inasmuch as this opinion was originally prepared before the recent decision of the Supreme Court of the United States in *Donald* v. *Scott*, 165 U. S., 68, was announced, I desire to avail myself of the opportunity now presented of adding, that it seems to me absolutely necessary to adopt the conclusion which I have reached, in order to avoid a conflict with the decision of the Supreme Court

of the United States, which, it must be conceded, is the final arbiter of all questions involving a construction of the Constitution of the United States. For these reasons I think that the judgment of this Court should be, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial. But as this Court is equally divided as to the question presented by this appeal, the judgment of the Circuit Court must stand affirmed, under the provisions of the Constitution of this State.

MR. JUSTICE GARY. The appellant was tried at the July, 1896, term of the Court for Oconee County, on an indictment, in which it was charged that he "did unlawfully store, and keep in possession, within this State, certain alcoholic contraband liquor, to wit: About two and one-half gallons of corn whiskey, which he used as a beverage." Under the charge of his Honor, the presiding Judge, the jury found the appellant guilty, and he has appealed to this Court upon the following exceptions: 1. "Because his Honor erred in charging the jury as follows: 'The question is: Did he have liquor there, keeping it without any stamps on it? If so, he must show that he either bought it through the regular channel, the dispensary, or that he obtained from the state commissioner the proper stamps to be put on it;' and should have charged the jury instead thereof that the keeping of a small quantity of liquor by a person in his dwelling house for his own personal use, and not to be bartered, sold or given away, does not constitute a crime, which is the subject of indictment. 2. That it is only the storing or keeping in possession of alcoholic liquors for some unlawful use or purpose which is made an indictable offense by the statute, and his Honor erred in not so holding."

The indictment was framed under the dispensary act of 1896. In considering these exceptions, it will be well to bear in mind that two distinct remedies are provided for a violation of the said act—one a punishment of the person, and the other a seizure and confiscation of property. It

will also be well to remember, that a careful examination of the different sections will show that many of them were only intended to apply to common carriers; that certain acts were declared unlawful simply for the purposes mentioned in the particular section; that the penalty for the act declared unlawful in the particular section is therein set forth; and that many of the sections were intended to apply only to proceedings *in rem* for seizing and confiscating the property therein mentioned. For these reasons, we will only set out in this opinion a few of the sections of said act. We desire it distinctly understood, at the outset, that, in our opinion, the provision of the act, as to keeping liquor in possession for one's own use, is on a different footing from the other acts made unlawful in section 1 of said act. Sections 1, 35, and 39 are as follows (italics ours): Section 1. "That the manufacture, sale, barter or exchange, receipt or acceptance, for unlawful use, delivery, storing, and keeping in possession, within this State, of any spirituous, malt, vinous, fermented, brewed (whether lager or rice beer) or other liquor, any compound or mixture thereof, by whatever name called or known, which contains alcohol, and is used as a beverage, by any person, firm or corporation; the transportation, removal, the taking from the depot or other place by consignee or other person, or the payment of freight or express or other charges by any person, firm, association or corporation upon any spirituous, malt, vinous, fermented, brewed (whether lager, rice or other beer) or other liquor, or any compound or mixture thereof, by whatever name called or known, which contains alcohol and is used as a beverage, *except as is hereinafter provided*, is hereby prohibited under a penalty of not less than three nor more than twelve months at hard labor in the state penitentiary, or pay a fine of not less than $100 nor more than $500, or both fine and imprisonment, in the discretion of the Court, for each offense. All such liquors, except when bought of a State officer authorized to sell the same, or in possession of one, and having been duly tested by the chemist of the

South Carolina College and found to be chemically pure, are declared to be contraband, and against the morals, good health, and safety of the State, and all alcoholic liquors in this State, and not having been tested by the chemist of the South Carolina College and found to be chemically pure, are hereby declared to be of a poisonous and detrimental character, and their use and consumption as a beverage are against the morals, good health, and safety of the State, and all such liquors may be *seized* wherever found without a warrant, and turned over to the state commissioner. 35. That in case of conviction of violations of any of the sections of this act where punishment is not especially provided for, the person or persons or corporations so convicted shall be punished in the discretion of the court trying the same. All alcoholic liquors, other than domestic wine, which do not have on the packages in which they are contained the label and certificates going to show that they have been tested by the chemist and purchased from a State officer authorized to sell them, are hereby declared contraband, and on seizure will be forfeited to the State, as provided in section 31: Provided, That this section shall not apply to liquor held by the owners of registered stills in bonded warehouses. *Persons having liquor which they wish to keep for their own use may throw the protection of the law around the same by furnishing an inventory of the quantity and kinds to the state commissioner, and applying for certificates to affix thereto.* Any person affixing or causing to be affixed to any package containing alcoholic liquor any imitation stamp or other printed or engraved label or device than those furnished by the state board of control shall, for each offense, be liable to a penalty of ten days imprisonment or $25 fine. Section 39. Every dispenser when he sells a package containing liquor shall put a cross mark in ink on the label or certificate thereon extending from the top to the bottom and from side to side. *When any liquor is seized because it has not the necessary certificates and labels required by this act, the burden of proof shall be*

*upon the claimant of said spirits to show that no fraud has been committed and that the whiskey is not contraband.*"

When these sections are construed together, they show: 1st. That the act does not prohibit, but, on the contrary, in express language, permits a person to keep liquor in his possession *for his own use.*    2d. That in order to throw the protection of the law around the liquor in his possession for his own use, it is necessary to furnish an inventory of the quantity and kinds to the state commissioner, and apply for certificates to affix thereto.    3d. That if the liquor in his possession is seized because it has not the necessary certificates and labels required by the act, and he claims the liquor, the burden of proof is upon him to show that it is for his own use.

The act contemplated that there would necessarily be some time, after the liquor came into possession of the person for his own use, before he could apply to the state commissioner for the necessary certificates and labels.   If it was seized because it did not have the necessary certificates and labels, he was not even then to be deprived of the liquor, provided he could show it was for his own use; but in that case the burden of proof would be upon him to show it was for such purpose.   Any other construction of the act would make a person a violator of the law who simply received as a present a bottle of liquor coming from another State, although it might be his intention forthwith to apply to the state commissioner for the necessary certificates and labels to affix to it.   A construction contrary to that which we place upon the act would even make a person a violator of the law who took a drink of whiskey unless it came from the dispensary.   We cannot think this was the intention of the legislature.

For these reasons, we concur in the conclusion announced in the opinion of Mr. Chief Justice McIver.

MR. JUSTICE JONES.    I think the judgment of the Circuit Court should be affirmed.   The sole question for determina-

tion is whether the dispensary act of 1896 prohibits, under penalty, the storing or keeping in possession of intoxicating liquor without having on the vessel containing it the stamps of the commissioner, as provided for in the act. It is contended that, to constitute an offense under this act, the "keeping in possession" must be for an unlawful use. That part of section 1 of the act to be construed is as follows: "That the manufacture, sale, barter or exchange, receipt or acceptance for unlawful use, delivery, storing and keeping in possession within this State (of intoxicating liquors, &c.), except as is hereinafter provided, is hereby prohibited, &c." The act, as printed, contains a comma after word "acceptance," but this is an error. The manuscript act, as ratified, contains no comma after the word "acceptance." In *Caston* v. *Brock*, 14 S. C., 107, it is said: "Punctuation is the least reliable guide to the sense of a statute, but cannot properly be said to be without any force. In itself, it is ordinarily insufficient to fix the sense of a statute where that is disputable, especially where the question is one of the force of a comma; but where the punctuation is strictly consistent with one of two senses equally grammatical and inconsistent with the other, it should be allowed the force of opening the question of construction to receiving aid from the context, and from the nature of the purpose the statute has in view." The wrongful presence of the comma in the printed act has, I think, given rise to this controversy. It is argued that the phrase, "for unlawful use," having a comma before and after it, may be transposed, so as to make the statute read: "That the manufacture, sale, barter or exchange, receipt or acceptance, delivery, storage and keeping in possession within this State, for unlawful use, &c., is prohibited;" thus making "for unlawful use" qualify all that precedes. It requires but a moment's consideration to perceive that such a construction would cut the vitals out of the dispensary law. It would not do to say that a *sale* of intoxicating liquor is not punishable under the dispensary law, unless it be shown that the sale was

"for unlawful use." How could any conviction ever·be had for selling intoxicating liquor? The defense would be that it is not unlawful to drink whiskey—therefore, a sale of whiskey as a beverage by anybody is not unlawful. One of the manifest primary objects of the dispensary act is to prohibit, within this State, the sale of intoxicating liquors for any purpose whatever, by any person whomsoever, except as provided for in the act. The construction contended for would practically nullify the dispensary law, for it is not possible to hold that the keeping of intoxicating liquor in possession without the commissioner's stamp is not punishable, unless it was kept for unlawful use, and not be compelled to hold the same thing in reference to the manufacture, sale, &c., of such liquor. Moreover, if a sale of intoxicating liquors is not unlawful, unless made for an unlawful use, then a keeping in possession of contraband liquor for *sale* for a lawful use is not unlawful. This would make a paradise for blind tigers. I should say, rather, there would be no blind tigers, since everybody could sell and keep for sale intoxicating liquors openly and with impunity. Such a construction is not at all "necesary to relieve the officers charged with the duty of storing, keeping, and selling spirituous liquors from the penalty prescribed for so doing," as argued, because the words, "except as is hereafter provided," qualifies not only the provision as to "transportation, removal, &c.," but also the provision as to the "manufacture, sale, barter or exchange, receipt or acceptance for unlawful use, delivery, storing and keeping in possession," of such liquors. The act afterwards provides how such liquors may be unlawfully manufactured, sold, received, delivered, stored, kept in possession, transported, &c. But the act nowhere provides that such liquor may be kept in small or large quantities for personal use, without the commissioner's stamp or certificate. On the contrary, section 26 of the act expressly declares "that the possession of said illicit liquors is hereby prohibited and declared unlawful." While it is true this section goes on to declare void all ob-

ligations contracted for the purchase of such liquors, the positive declaration above quoted, if any is needed, throws light on the question whether the dispensary law intended to make punishable the storing or keeping in possession of contraband liquors, without regard to the use made of them. It seems clear that the words, "for unlawful use," qualifies alone the preceding words, "receipt or acceptance." The legislature, doubtless, intended by placing these words with the words, "receipt or acceptance," to avoid the construction that might otherwise be tenable, that under the dispensary law the receiver or buyer of such liquor is equally guilty with the seller. The legislature, no doubt, thought it wise not to obstruct the obtaining of evidence to convict a seller by making the person who receives or accepts the liquor sold also liable to punishment. Or perhaps it was thought best not to make the acceptance of a drink criminal. The acts of 1893 and 1894, it should be remembered, read, "manufacture, sale, barter or exchange, receipt, acceptance, delivery, storing and keeping in possession, &c." The act of 1896 changed "receipt, acceptance" into "receipt or acceptance for unlawful use." We happen to know that some lawyers believed that under the acts of 1893 and 1894 the buyer was liable to indictment as well as the seller. This would sufficiently account for the change in the act of 1896, limiting the liability to indictment for merely receiving or accepting intoxicating liquor. The construction we contend for is not only a natural and grammatical construction of the language used, but is consistent with the scheme and purpose of the act; whereas the other construction is unnatural, ungrammatical, and destructive of the design and operation of the dispensary law. The question is one of construction merely. It is our duty simply to declare the law. We have nothing to do with its wisdom or its severity. The harshness of its operation, real or supposed, should not in the least swerve us from our plain duty.

There was no error in the charge of the Circuit Judge

complained of, and the judgment of the Circuit Court should be affirmed.

MR. JUSTICE POPE concurs in the opinion of Mr. Justice Jones.