The defendant held a $16,000 building and loan mortgage on the property of one Rosmondi. The complainant, an insurance company, insured Rosmondi against loss by fire, primarily payable to the defendant as mortgagee; the policies contained the standard mortgage clause. Rosmondi set fire to the building in 1925, and the fire insurance company, denying liability to him, paid the loss, $3,050.16, to the mortgagee; and the insurance company claiming to be subrogated pro tanto to the mortgage security, the mortgagee assigned it to an undivided interest in the mortgage to the extent of $3,050.16; the proportional interest on the mortgage debt accruing thereafter was to be paid over to the insurance company as the mortgagee collected it. The assignment was not recorded. The instrument is, in effect, a declaration in writing of the insurance company's rights by operation of law, the apparent outright assignment of an undivided interest being modified by the recitals which limited it to the right of subrogation; and that is admitted by the pleadings. At that time $15,020 was due on the mortgage, which was reduced by subsequent owners to $12,659.20, in installment payments, and on June 19th, 1928, the balance was paid and the mortgage canceled. The complainant's subrogated interest and right by assignment was altogether ignored. The bill is for an accounting.
Motion was made to dismiss the bill for want of jurisdiction, because of an adequate remedy at law, and was denied for the reason that the proceeds of the mortgage with which the defendant was charged, the amount whereof was unknown to the complainant, were held in trust. Monmouth County Mutual Fire Insurance Co.
v. Hutchinson, 21 N.J. Eq. 107; Camden Fire Insurance Assn. v.Prezioso, 93 N.J. Eq. 318.
The defense set up in the answer is that the mortgagee used the insurance money to restore the fire damaged building, thereby re-establishing the mortgage security, and that thus restored the mortgaged premises were not sufficient security for and were not worth the amount of the then *Page 85 
mortgage debt, $15,020, plus $3,050.16, laid out in repairing the building, and hence the complainant suffered no injury by the surrender of the mortgage. The building was new at the time of the fire; it cost $20,000 and the land was worth $2,200 and in its proof of loss the defendant estimated the value of the insured premises at $22,000; but we are not concerned with the value of the security as of that time. The question is what was the worth of the security when the defendant surrendered the mortgage? The defendant says $16,860 and at the hearing its real estate expert testified that that was the fair market value of the mortgaged premises when the mortgage was surrendered in 1928 for $12,659.20. Over $4,000 of the security was relinquished; more than enough to pay the complainant's claim of $3,050.16 and interest thereon approximately $1,000.
The defendant's explanation is, as stated by counsel, that it did not understand that its outlay for restoring the building could be tacked on to the mortgage. Could it reasonably have supposed that the indemnity paid to it by the insurance company was to benefit the fire bug? The excuse is hard to believe, but if true, the defendant's gross ignorance of its rights and of its obligations to the complainant furnishes no justification. Whatever may have been its notion of the law, the fact that the defendant had assigned a part of the mortgage and that for a year before it gave up the mortgage, the complainant repeatedly demanded an accounting, must have excited some sense of responsibility to the complainant, and whatever may have been its motive, the fact remains that the defendant wilfully sacrificed the complainant's security and the suspicion will not down that it was not insensible of perpetrating a fraud on the complainant. The loss must fall on the defendant. It must account to the complainant.
The cause was tried on the theory of misappropriation of trust securities. The bill will be amended accordingly. *Page 86