52 N.J. Super. 254 (1958)
145 A.2d 344
CLAYTON ROGERS AND MARJORIE ROGERS, PLAINTIFFS-APPELLANTS,
v.
AMERICAN FIDELITY AND CASUALTY COMPANY, INC., A FOREIGN INSURANCE CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided October 27, 1958.
*256 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Charles Blume argued the cause for plaintiffs-appellants.
Mr. Burton J. Ironson argued the cause for defendant-respondent (Mr. Sam Lieberman, attorney).
*257 The opinion of the court was delivered by CONFORD, J.A.D.
This is an action on an automobile collision insurance policy. The amount of recovery sought is $410. The Morris County District Court, trying the case without a jury, held for the defendant, "the only question for determination" being stated as "whether the plaintiffs did anything which would affect the defendant's rights of subrogation, if any," under the policy.
The statement of the case certified by the trial judge reveals the following factual situation. The defendant issued its collision automobile policy to plaintiffs as the "Named Insured" with a $75 deductible clause. Paragraph 11 of the policy under the head, "CONDITIONS," reads as follows:
"11. Subrogation: In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights." (Emphasis supplied.)
During the policy term there was an accidental collision between plaintiff's car, then being driven by plaintiff Marjorie Rogers' sister, Mary Parker, and a motor vehicle owned and operated by Albert Wershing. At the time, Mary Parker "was taking the plaintiffs' two children" to the Parker home "for a visit" and was using the car by loan from Mrs. Rogers. Subsequent to the accident, as set forth in the statement of the case,
"Mrs. Rogers, who did not carry liability insurance, was informed by the Motor Vehicle Department, that, unless she posted security or obtained a release from Mr. Wershing, she would lose her driving privileges. Thereupon, Mrs. Rogers contacted Mr. Wershing at the latter's home for the express purpose of obtaining from Mr. Wershing a release so that the provisions of the Financial Responsibility Law would not be invoked. Mr. Wershing referred the matter to his insurance company, Selected Risks, whereupon a Settlement Agreement was entered into between Mr. Wershing and Miss Parker providing for payment of Mr. Wershing's damages in the sum of $710.00 at the rate of $5.00 every other week. Upon payment of *258 this sum, the Agreement provided for Miss Parker, who signed the Agreement, to be fully and completely released from any and all claims of Mr. Wershing."
Miss Parker, over objection, testified on behalf of defendant that she had entered into the agreement referred to and was making payments thereon to Mr. Wershing's insurance carrier.
Wershing, called by the defendant, was permitted to testify over objection that Miss Parker told him the collision was her fault. There is no other evidence bearing upon the circumstances surrounding the accident.
The plaintiffs raise the following points on appeal: (1) In the absence of evidence by defendant showing that plaintiffs "might have recovered" for their loss in an action against Wershing there was no showing of "prejudice" to defendant's rights as subrogee of plaintiffs by what was done here, the subrogation right having no greater substance than plaintiffs' cause of action against Wershing. (2) Plaintiffs were not bound by what Miss Parker said or did, there being no agency between them. Moreover, a settlement agreement is not admissible as to liability. (3) Plaintiff Clayton Rogers is particularly free of responsibility as he had nothing whatever to do with the settlement with Wershing.

I.
For purposes of clearness in exposition of the legal problem involved in the first point of appeal we treat the matter initially as though Mrs. Rogers had herself been operating the car when the accident occurred and had made the settlement Miss Parker did. There would seem little basis for doubt that in such a case Mrs. Rogers would be estopped against subsequently bringing an action against Wershing predicated upon his negligence and her own freedom from contributory negligence, within the rationale of Kelleher v. Lozzi, 7 N.J. 17 (1951). Consequently, the settlement would as effectively foreclose any possibility of defendant, *259 as subrogee, realizing anything from Wershing, as though the insured had given Wershing a release in return for a consideration. In the latter situation the rule supported by the overwhelming weight of authority is that the insured may not recover on the policy, being precluded by his own breach of contract in respect to the subrogatory position of the carrier. Hilley v. Blue Ridge Insurance Company, 235 N.C. 544, 70 S.E.2d 570, 38 A.L.R.2d 1090 (Sup. Ct. 1952); Auto Owners Protective Exchange of Kankakee, Ill. v. Edwards, 82 Ind. App. 558, 136 N.E. 577 (App. Ct. 1922); Libertin v. St. Paul Fire and Marine Insurance Company, 74 S.D. 436, 54 N.W.2d 168 (Sup. Ct. 1952); Conard v. Moreland, 230 Iowa 520, 298 N.W. 628 (Sup. Ct. 1941); Farmer v. Union Insurance Company, 146 Miss. 600, 111 So. 584 (Sup. Ct. 1927); Chandler v. State Farm Mut. Auto Ins. Co., 200 Miss. 702, 28 So.2d 571 (Sup. Ct. 1947); Knight v. Calvert Fire Ins. Co., 268 S.W.2d 53 (Mo. Ct. App. 1954); Richardson v. Employers Mut. Liability Ins. Co., 269 S.W.2d 132 (Mo. Ct. App. 1954); Highlands v. Cumberland Valley Farmers Mut. Ins. Co., 203 Pa. 134, 52 A. 130 (Sup. Ct. 1902); Niagara Fire Ins. Co. v. Fidelity Title and Trust Co., 123 Pa. 516, 16 A. 790, 10 Am. St. Rep. 543 (Sup. Ct. 1889); Bloomingdale v. Columbia Ins. Co., 84 N.Y.S. 572 (Sup. Ct., App. Term, 1903); Maryland Motor Car Ins. Co. v. Haggard, 168 S.W. 1011 (Tex. Civ. App. 1914); 6 Appleman, Insurance Law and Practice (1942), § 4093, pp. 588-589; Annotation, 38 A.L.R.2d 1095, 1096 (1954). See also Remedial System of Loaning v. N.H. Fire Ins. Co., 227 Ky. 652, 13 S.W.2d 1005, 1006 (Ct. App. 1929); and Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456, 459 (Sup. Ct. 1948).
The only case we find in the foregoing category which considers an argument by an insured that the carrier defendant has the burden of showing the liability of the third person to the insured in order to avoid liability on the policy because of a release given by the insured is Universal Credit Co. for Use of Lewallen v. Service Fire Ins. Co., *260 69 Ga. App. 357, 25 S.E.2d 526 (Ct. App. 1943). The contention was disposed of by the observation that since the insured had brought suit against the third person charging him with negligence, therefore "as between the parties this sufficiently established the liability of the third person" (25 S.E.2d at page 529).
Where, however, the insurance company after paying the insured on the policy sues him to recover back the amount paid because of a release given the third person there is substantial authority supporting both sides of the question as to whether the carrier must show liability, or the probability thereof, of the third person to the assured in respect of the loss or casualty. On the affirmative of the issue may be found Century Insurance Co., Ltd. v. Joachim, 17 N.J. Misc. 229 (Dist. Ct. 1939); Hamilton Fire Insurance Co. v. Greger, 246 N.Y. 162, 158 N.E. 60 (Ct. App. 1927); James v. Emmco Ins. Co., 71 Ga. App. 196, 30 S.E.2d 361 (Ct. App. 1944); Pasley v. American Surety Co., 253 S.W.2d 86 (Tex. Civ. App. 1952); Washington Fire & Marine Ins. Co. v. Williamson, 100 So.2d 852 (Miss. Sup. Ct. 1958); Royal Indemnity Co. v. Pharr, 94 Ga. App. 114, 93 S.E.2d 784 (Ct. App. 1956); Franklin Fire Ins. Co. of Philadelphia v. Weinberg, 197 App. Div. 576, 188 N.Y.S. 610 (App. Div. 1921). See also Pacific Fire Ins. Co. v. Smith, 202 S.W.2d 328, 330 (Tex. Civ. App. 1947); and Home Insurance Company of New York v. Smith, 235 Mo. App. 552, 140 S.W.2d 64, 68 (Ct. App. 1940).
The rationale of these decisions is expressed in the leading Greger case, supra, where Judge Lehman said, for the Court of Appeals (158 N.E. at page 62):
"[T]he insurance company should recover only for the loss it has sustained by that release * * *. It must in such case show that in fact the wrong has been committed and also the damages caused thereby. In order to prove damage, it must show that in fact it might have recovered against the railroad company as a wrongdoer."
The New York court laid to one side, unanswered, the question as to whether, if the action were one by the insured *261 on the policy rather than by the carrier for damages for breach of the policy, it would follow those courts which hold for the carrier "regardless of whether or not recovery might have been had against the wrongdoer if no release had been given" (158 N.E. at page 62). A dictum elucidative of the validity of the distinction between the two situations and supporting the defensive position of the carrier when sued is found in Franklin Fire Ins. Co. of Philadelphia v. Weinberg, supra (188 N.Y.S. at page 614).
Many courts permit the carrier to recover back payments made without knowledge of the fact that the insured has settled his case with the putative wrongdoer and given a release, or when that has taken place subsequently, without requiring any evidential demonstration of liability by the third person to the insured. Universal Insurance Company v. Millside Farms, Inc., 119 N.J.L. 534 (Sup. Ct. 1938); Illinois Automobile Ins. Exch. v. Braun, 280 Pa. 550, 124 A. 691, 36 A.L.R. 1262 (Sup. Ct. 1924); Inter Insurance Exchange of Chicago Motor Club v. Anderson, 331 Ill. App. 250, 259, 73 N.E.2d 12 (App. Ct. 1947); Service Fire Insurance Company v. Powell, 70 Ga. App. 213, 27 S.E.2d 896 (Ct. App. 1943); Home Insurance Company v. Bernstein, 172 Misc. 763, 16 N.Y.S.2d 45 (Mun. Ct. 1939); Travelers Fire Insurance Company v. Ackel, 29 So.2d 617 (La. Ct. App. 1947); and Western Fire Insurance Company v. Phelan, 179 Kan. 327, 295 P.2d 675 (Sup. Ct. 1956). See Annotation, 51 A.L.R.2d 697 (1957).
The Universal Insurance Co. case, supra, decided by our former Supreme Court, purported to rest its decision on the law of Pennsylvania, as a matter of conflict of laws, and this is the basis upon which it was distinguished in Century Insurance Co., Ltd. v. Joachim, supra. But the opinion of the Supreme Court reflects also an independent view of the two justices comprising the court that the mere breach of the contract of insurance by the insured entitled the company to recover back what it had paid on the policy (119 N.J.L. at page 536). Significantly, for present purposes, the court adds: "If the settlement with the railroad *262 company had taken place before demand was made of the plaintiff under the insurance policy, it cannot be denied that plaintiff would have been relieved from its liability under the policy." (Ibid.) It may be noted that the carrier, as subrogee, has the equitable right to impress a trust upon the amount received by an insured in a settlement of a cause of action with a putative tortfeasor effected in violation of the terms of the policy. Monmouth County Mut. Fire Insurance Company v. Hutchinson, 21 N.J. Eq. 107 (Ch. 1870); see Universal Insurance Company v. Millside Farms, Inc., supra (119 N.J.L. at page 536).
After considering all of the authorities, it is our judgment that when an insured under a collision policy containing such a condition as the instant clause 11 settles his rights or liabilities vis a vis the other party to an accidental collision in such a manner as would as a matter of law bar a subsequent action by the insured against the other party for damages to the automobile, he breaches the subrogation condition in the contract and prima facie loses any right of recovery on the policy.
It is essential in construing such a provision as that which concerns us here that we have regard for the practical exigencies which obviously explain its inclusion in the policy. See Kindervater v. Motorists Casualty Insurance Co., 120 N.J.L. 373, 376, 377 (E. & A. 1938). The value to the insurer of the right of subrogation is not confined to those instances in which it successfully pursues the third person to judgment as surrogate of the insured. A substantial part of its reasonably expectable revenues from this source accrues through settlements of subrogated claims against third persons. Most accident claims have some settlement value, even if the case for liability is weak. The meaning of a clause like condition 11 of this policy must be appraised from the standpoint of the time stage at which the insured might commit the prohibited act of prejudicing the subrogated right. That time is ordinarily prior to the event which would fix the liability of the parties to the accident inter se, viz., an adjudication in a litigation brought by one against *263 the other. It therefore appears to be obvious that when the insured agrees by the contract that he "shall do nothing after loss to prejudice such rights," this means the potential right of recovery against the third person in its necessarily problematical status as of prior to adjudication in a lawsuit against the third person. Thus anything the insured does which materially hampers the chances of recovery on behalf of the insured in such a prospective lawsuit must be regarded, realistically, as prejudicing the carrier's subrogatory right within the meaning of the policy.
To require the carrier to establish to the satisfaction of the fact finder in the litigation with the insured, additionally, that the insured would necessarily have prevailed in a negligence action against the third person, is, in our judgment, to render the prejudice provision practically useless and to subvert its intent from any reasonable viewpoint.
If the latter is what is meant by the New York Court in the Greger case, supra, in requiring the carrier to prove "that in fact it might have recovered" against the third person, we find it totally unpersuasive. If that is not the intention as to the criterion contemplated by that decision we are uncertain whether it requires proof that there is a possibility of recovery, or a probability thereof, or any other particular degree of likelihood of recovery against the third person. In our judgment the policy condition presently under consideration contemplates no qualifications on the undertaking assumed by the assured which would place a burden on the carrier of establishing affirmatively the existence of any particular degree of likelihood of recovery against the third person. It may well be that if the insured, in the litigation with the carrier, could establish conclusively or overwhelmingly the absence of any liability case against the third person, the breach of condition might be held merely technical and not effective to absolve the carrier of its liability on the policy. We have no present occasion to pass upon such a situation as that is not the showing here.

*264 II.
We pass to consideration of whether the foregoing conclusions become impertinent in the light of the fact that it was Miss Parker, not Mrs. Rogers, who was driving the car and who made the settlement with Wershing.
One overriding factor in the case brings us to the conclusion that the subrogation condition was fatally breached by one of the named insured. This is that the arrangement for the settlement agreement with Wershing was brought about, according to the statement of the case, on the initiative of Mrs. Rogers. This, we are satisfied, would estop the latter from recovery in any subsequent action brought in her name against Wershing on the property damage claim. See Kelleher v. Lozzi, supra. Several factors appear to have coincided to induce the determination in the Kelleher case. But one of them was that where one of two parties to a vehicular collision pays money in settlement of the claim of the other and accepts a release from him he is estopped from later instituting a damage action against the other arising out of the same accident, because by his prior act he "acknowledged a valid claim" by the other against him which was "logically and factually impossible to reconcile" with a valid claim by him against the other (7 N.J. at page 24).
It is entirely clear to us that when Mrs. Rogers, for whatever reason, approached Wershing at his home and induced him to sign a release agreement in return for Miss Parker's undertaking to pay him $710 in periodic installments for the damages to his car the question of his negligence in respect to any later claim that Mrs. Rogers might assert against him flowing from the same accident was, to borrow again from the language as well as the underlying philosophy of Kelleher, "by every fair expectation * * * settled in the negative by the parties inter sese." Wershing presumably had every reason to suppose that Mrs. Rogers' participation in the settlement arrangements fairly implied a negation of any claim by her against him for negligence, *265 and his consummation of the arrangements under such conditions, particularly his agreement to take payment of $710 by bi-weekly $5 payments, would estop Mrs. Rogers from any later claim against him. This activity by Mrs. Rogers, therefore, entirely apart from any significance which might be attached to the participation in the matter by Miss Parker as an additional insured under the policy, effectively foreclosed any possibility of recovery against Wershing in the name of the insured by the present defendant and therefore released it from liability on the policy for breach of condition. Whittle v. Associated Indemnity Corp., 130 N.J.L. 576 (E. & A. 1943); Atlantic Casualty Insurance Co. v. Interstate Insurance Co., 28 N.J. Super. 81, 88 (App. Div. 1953); Brindley v. Firemen's Insurance Co. of Newark, 35 N.J. Super. 1 (App. Div. 1955).
In view of the foregoing conclusions we need not pursue questions raised concerning Miss Parker's status vel non as agent of Mrs. Rogers, nor as to the evidential competency, ordinarily, of payments by way of compromise as admissions of liability. As to the claimed error of the trial court in permitting testimony as to an admission of fault by Miss Parker to Wershing, this does not bear upon the effect of Mrs. Rogers' conduct which we have determined released the defendant from liability, and therefore, if there was error, it was immaterial and not prejudicial.

III.
It is particularly urged in behalf of the plaintiff, Clayton Rogers, that he had nothing to do with the arrangements made with Wershing and therefore cannot be charged with prejudicing defendant's subrogated position in respect to recovery against Wershing. We see nothing in the statement of the case to suggest that this point was urged before the trial court. Had it been, there might in all probability have been adduced specific testimony to buttress the likelihood from the surrounding circumstances that Mrs. Rogers was acting for both of them in connection with this matter. *266 See Grieco v. Grieco, 38 N.J. Super. 593, 596, 597 (App. Div. 1956). Moreover, the statement of questions involved in the brief does not set forth or necessarily suggest the point, for which reason it might well be ignored. R.R. 1:7-1 (c).
We note from the sworn proof of loss in evidence that Marjorie Rogers is listed as the sole owner of the car in question. Consequently, an action under the subrogated claim against Wershing would have to proceed solely in Mrs. Rogers' right as owner, thereby leaving the claim vulnerable to the estoppel against her discussed hereinabove, regardless of Mr. Rogers' assumed non-participation in the breach of contract. Mrs. Rogers' actions alone would thus appear to have effectively prejudiced defendant's subrogatory rights, thereby warranting the defense asserted against both plaintiffs.
For any of the reasons mentioned, the point made on plaintiff Clayton Rogers' behalf does not move us to reverse as to him.
Affirmed.