67 N.J. Super. 475 (1961)
171 A.2d 120
PROVIDENCE WASHINGTON INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
THOMAS HOGGES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1961.
Decided May 12, 1961.
*476 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Robert Kleiner argued the cause for the appellant (Mr. Harry Zax, attorney).
Mr. Donald L. Berlin argued the cause for the respondent (Messrs. Stevenson & Willette, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This case was submitted to the county district court for decision upon a stipulation of facts. The stipulation sets forth that plaintiff insurer issued a policy to defendant, insuring him against damage of his automobile by collision. Plaintiff apparently also insured defendant against liability, by the same or another policy. The only portion of the collision policy which is made part of the record is the following clause:
"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."
On or about March 15, 1957 defendant, while driving his automobile, was in a collision with a car owned by Bernard Sage and driven by Joseph Pistocchi. Sage and Pistocchi will hereafter be called the tortfeasors. Plaintiff and defendant *477 settled defendant's claim on the collision policy on the basis that defendant's car had suffered $900 damage, and plaintiff paid defendant $850, there apparently being a $50 deductible clause. The date of this payment by plaintiff is not given.
Thereafter, on or about February 3, 1958, Hogges instituted an action for personal injuries and property damage against the tortfeasors, which resulted, on April 24, 1958, in a judgment against Hogges of no cause of action. Plaintiff insurer "was at no time given notice of the commencement or pendency of the suit in the Bergen County District Court and did not participate in the prosecution of the said action."
The stipulation then says:
"On December 30, 1958, suit was instituted against the defendant, Thomas Hogges, by Bernard Sage for property damage arising out of this said accident in the amount of Six Hundred ($600.00) Dollars. * * * Plaintiff, Providence Washington Insurance Company, entered a defense under the terms of their policy aforesaid.
On March 2, 1959, plaintiff Providence Washington Insurance Company counterclaimed for the property damage incurred by the defendant herein under the terms of the subrogation clause of the policy aforesaid. Subsequent to April 24, 1958, for the first time, the plaintiff, Providence Washington Insurance Company was informed of the action that had been brought in the Bergen County District Court. Thereafter the suit brought by Bernard Sage was settled in the amount of Two Hundred and Seventy-Five ($275.00) Dollars and the plaintiff, Providence Washington Insurance Company dismissed their counter-claim for property damage."
Upon the basis of this stipulation of facts, the trial court entered judgment for the plaintiff for $850, and defendant appeals.
The complaint in the action now before us, and the answer if any, have not been made part of the appendix, in violation of R.R. 1:7-2. Consequently, we do not know upon what theory plaintiff framed its complaint. However, from plaintiff's brief it appears that its position is that the carrying of the action to an unsuccessful conclusion without its knowledge prejudiced plaintiff's rights as a matter of law, and that this entitled plaintiff to the return of its $850 payment *478 without proof that the tortfeasors were actually liable, or that plaintiff was in fact damaged. Plaintiff equates the facts at bar with the situation where an insured gives a general release to the tortfeasor after having received payment from his insurer. In such a case, says plaintiff, citing the dictum in Rogers v. American Fidelity & Casualty Company, 52 N.J. Super. 254, 262 (App. Div. 1958), the insurer is entitled to recover the entire sum paid to the insured "without showing any evidential demonstration of liability by the third person to the insured."
But the situations cannot be equated. Plaintiff admits in its brief "that the defendant had a right to institute a civil action for personal injuries," and it does not contend that it is entitled to notice of the institution or prosecution of an action for personal injuries alone. It does contend, "[h]owever, [that] the defendant had no right to institute an action for property damage without putting the plaintiff on notice of the pendency of such an action."
Had Hogges sued for his personal injuries alone, the adverse judgment (which, under the stipulated facts, we must assume established, at least as between Hogges and the tortfeasors, that the tortfeasors were not liable) would have barred the insurer's right to recovery as effectively as the judgment complained of. Esper v. Manhattan Transit Co., Inc., 112 N.J.L. 186 (Sup. Ct. 1934), affirmed opinion below 115 N.J.L. 113 (E. & A. 1935); Wirth v. Slinn, 10 N.J. Misc. 361 (Sup. Ct. 1931); Freitag v. Renshaw, 9 N.J. Misc. 1161 (C.P. 1931). Although that would have prejudiced the insurer, it would not have been a violation of the policy. The equitable right of subrogation is subject to the exercise by the insured of his legal rights. Cf. Employers' Fire Ins. Co. v. Ritter, 112 N.J. Eq. 418 (Ch. 1933). The fallacy of the analogy to the execution of a release becomes obvious when we consider the destructive effect of a judgment of no liability, in an action by the insured against the tortfeasor before the insurer makes payment, upon the insurer's right of subrogation. In that case, *479 the insured would nevertheless be entitled to recover from the insurer; contra, if he had given a release to the tortfeasor.
Since that is so, should the mere fact that Hogges added a count for the property damage change the result? It is not contended that Hogges acted in bad faith. He still had a prior right to $50 of any sum recovered for property damage from the tortfeasors, and to any surplus over $900. If he had recovered a judgment against the tortfeasors for property damage it would have been a benefit to the insurer, for he would have held it in trust for the insurer, up to $850.
There is nothing in the stipulated facts to indicate, nor is it suggested, that the insured's suit against the tortfeasors was improperly or negligently handled, or that the insurer could have done or supplied anything which would have resulted in a verdict for Hogges.
The insurer knew that Hogges had to sue for his personal injuries within two years after the accident, and the effect upon its subrogation rights of an adverse judgment in such an action, yet it does not appear that the insurer ever made any approach to Hogges for joint action, or any effort to collect on its own behalf from the tortfeasors, or that it even intended to do so. The insurer also covered Hogges against liability. It may be that its investigation satisfied it of the tortfeasors' non-liability, and that it had decided not to press its subrogation in order to avoid precipitating counteraction by the tortfeasors. It does not appear when the insurer paid Hogges, or precisely when it learned of the adverse judgment (the stipulation merely says "after April 24, 1958"), but it does appear that it never made any effort to enforce its right of subrogation against the tortfeasors or against the insured until two months after Sage started the action against Hogges, which the insurer was compelled to defend, when it counterclaimed for the property damage.
The principles which govern the problem of the impairment of the right of subrogation when the insured sues *480 the insurer to recover on the policy are not identical with those which govern actions by the insurer against the insured to recover its payment because of impairment which occurred after the claim was paid. In the former situation "the rule supported by the overwhelming weight of authority is that the insured may not recover on the policy, being precluded by his own breach of contract in respect to the subrogatory position of the carrier." Rogers, supra, 52 N.J. Super., at p. 259. In the latter situation, the insurer sues either to reach the proceeds of a settlement or recovery, or on some similar trust theory; or for damages for the breach of the subrogation clause. See Annotation, 51 A.L.R.2d 697 (1957).
The Rogers case, supra, was of the first type, in which an insurer defended an action by an insured on the policy on the ground that a release had been given on behalf of the insured to the tortfeasor. We held that in such a case it is not necessary for the insurer, to establish its defense, to prove that the tortfeasor was liable. The opinion pointed out, with seeming approval, that in some (but not all) jurisdictions the same rule, dispensing with proof of the tortfeasor's liability, was applied also in actions of the second type, in which the insurer sued to get back its payment because the insured delivered a release to the tortfeasor after the payment. However, all that the court decided in Rogers was (page 262; emphasis ours) that:
"After considering all of the authorities, it is our judgment that when an insured under a collision policy containing such a condition * * * settles his rights or liabilities vis a vis the other party to an accidental collision in such a manner as would as a matter of law bar a subsequent action by the insured against the other party for damages to the automobile, he breaches the subrogation condition in the contract and prima facie loses any right of recovery on the policy."
Compare, however, Century Insurance Company, Ltd. v. Joachim, 17 N.J. Misc. 229 (D. Ct. 1939); and Hamilton Fire Ins. Co. v. Greger, 246 N.Y. 162, 158 N.E. 60, *481 55 A.L.R. 921 (Ct. App. 1927). See also American Eagle Fire Ins. Co. v. Grant Building & Loan Ass'n, 108 N.J. Eq. 83 (Ch. 1931), affirmed opinion below 110 N.J. Eq. 485 (1932).
In the Hamilton case Judge Lehman, speaking for a unanimous court which included Chief Judge Cardozo and other distinguished judges, drew the following distinction between the situation when the insurer is defending a suit upon a policy, and when the insurer is suing to get back money paid because of a release given by the insured after the payment:
"The courts of some other jurisdictions have held that a release given by the assured to an alleged wrongdoer before payment by an insurance company of the damages caused by the alleged wrongdoer constitutes a defense to an action upon the policy, regardless of whether or not recovery might have been had against the wrongdoer if no release had been given. Sims v. Mutual Fire Ins. Co., 101 Wis. 586, 77 N.W. 908. We are not called upon to decide whether in the same circumstances we would reach a like conclusion. Here the insurance company asserts a claim against the assured for wrong and damages alleged to have been caused to it by the assured. See Vooth v. McEachen, 181 N.Y. 28, 73 N.E. 488, 2 Ann. Cas. 601; McAleenan v. Massachusetts Bonding & Insurance Co., 232 N.Y. 199, at page 205, 133 N.E. 444. It must in such case show that in fact the wrong has been committed and also the damages caused thereby. In order to prove damage, it must show that in fact it might have recovered against the railroad company as a wrongdoer." (158 N.E., at p. 62)
In any event, whatever may be the just rule as to proof of damages in cases in which the insured has released the tortfeasor after payment, what we have at bar is not a release by him but a judgment in a bona fide action brought and prosecuted by him that the tortfeasors are not liable. We therefore may not indulge in any presumptions, conclusive or otherwise, that the tortfeasors here were in fact liable. Consequently, under the facts stipulated, it was not sufficient to prove merely that the insured sued the tortfeasors and lost, and that therefore the insurer can no longer recover from the tortfeasors.
*482 The insurer argues, in effect, that even though the insured was not obliged to notify it when he sued for personal injuries, when he added the count for property damage he became obligated to do so, and the mere breach of that obligation entitles plaintiff to the refund of its payment. Plaintiff cites no authority for this proposition. It says that this is a case of novel impression. We perceive no merit in plaintiff's position. Subrogation is an offspring of equity, and its equitable principles apply even when the subrogation is based on contract, except as modified by specific provisions in the contract. Here we have only the general clause quoted. Under such a clause, in case of doubt the interests of the insured come first. In the absence of express terms in the contract to the contrary, he must be made or kept whole before the insurer may recover anything from him or from a third party under its right of subrogation. Against the insured, as well as against third parties, there may be recovery by the insurer (again, subject to the express terms of the contract) "only if the cause is just and enforcement is consonant with reason and justice." Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 172, 173 (1954); Board of Education, Township of Woodbridge v. Kane Acoustical Co., Inc., 51 N.J. Super. 319, 327 (App. Div. 1958). Here plaintiff has shown nothing beyond the adverse judgment in Hogges' action against the tortfeasors.
For the foregoing reasons the judgment is reversed, and the cause is remanded for the entry of judgment in favor of defendant. No costs.