THE MONMOUTH COUNTY MUTUAL FIRE INSURANCE COMPANY *vs.* HUTCHINSON AND THE CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY.

1. Where an insurance company pays the insured for a loss by fire occasioned by the fault of a railroad company, and the insured afterwards receives the amount from the railroad company, in satisfaction of his damages, he holds it in trust for the insurers, and they may recover it from him by suit in equity.

2. If the railroad company does not pay the insured his damages, or pays them knowing that he has received the amount insured from the insurance company, the railroad company is liable to the insurance company in a suit at law, which it has the right to bring in the name of the insured, without his consent, to compel repayment of the damages to the amount of the sum paid by it; and a release by the insured to the railroad company would be no defence to such suit.

3. But these two remedies cannot be pursued in one suit; neither the insured nor the railroad company is a proper or necessary party to a suit against the other; and in no way are they jointly liable so that a decree could be made, or a judgment given against both.

4. When the suit is by bill against both, if the only prayer were for a

decree for the payment of the money, a demurrer would be sustained for the misjoinder. But under the general prayer for relief, the bill will be retained to give such equitable relief as the facts may warrant.

5. A release by the insured to the railroad company, when the railroad company knew that the insured had received the amount of the insurance, would be a fraud upon the insurance company, and would be void for the fraud. And in such case, the insurance company has the right to have the release declared void before commencing a suit in the name of the insured against the railroad company. In such a suit against the railroad company which holds the release, the insured would be a proper, if not a necessary party.

6. Courts of equity have, peculiarly, cognizance of matters of fraud, and have jurisdiction over instruments affected by fraud, and will declare them void on that account, even though the fraud is such as might be proved at law so as to avoid the effect of the instrument.

---

This cause was argued upon separate demurrers, filed by each defendant to the complainants' bill.

*Mr. Emery* and *Mr. Richey*, for Hutchinson.

*Mr. C. E. Green* and *Mr. Stockton*, for the railroad company.

The bill alleges that, on the 11th of June, 1861, The Monmouth County Mutual Fire Insurance Company delivered to Hutchinson, one of the defendants, a policy of insurance, by which they agreed to indemnify him "for all damages or loss which he might sustain" for a specified time, "not exceeding the sum of $1200, by reason of fire happening" to the house insured. That they insured also another house for $400, and a shed for $200. That, on the 5th day of March, 1866, the houses and shed described in the policies were destroyed, and were a total loss. That, on the 21st day of March, 1866, Hutchinson made oath to the destruction of the property by fire, and that it was worth, at the time, $4000, and that the fire did not take place from any cause which invalidated the insurance. That on the 9th of May, 1866, the insurance company paid Hutchinson $1800, in accordance with their agreement.

The bill further alleges that, since that payment, they have discovered that the fire was caused by the carelessness, mismanagement, negligence, and default of The Camden and Amboy Railroad and Transportation Company. After stating in what respect the railroad company were negligent, the bill states that, by reason thereof, Hutchinson had an action for damages caused by the said fire against The Camden and Amboy Railroad and Transportation Company, for the full value thereof, which complainants charge were worth $4000.

Complainants further show, by their bill, that, after the happening of the fire and their payment of the $1800, they became entitled to all the rights of action which Hutchinson had against the Camden and Amboy railroad, to the extent of the sum of $1800, and had a right to be subrogated to the rights and remedies he had against The Camden and Amboy Railroad and Transportation Company, to the same extent. That the payment of the $1800 to Hutchinson, operated as an equitable assignment to complainants of so much of the claim of Hutchinson against the company, as was necessary to reimburse them; and that Hutchinson became a trustee for them for so much of the claim as was necessary to reimburse them; and that he had no right to release The Camden and Amboy Railroad and Transportation Company from any right of action complainants had against the said railroad company.

It is further alleged, on information and belief, that, on the 13th of November, 1866, the railroad company paid Hutchinson the sum of $2000 as satisfaction of the damages sustained by him on account of the said fire, and that Hutchinson holds the said money as trustee for complainants to reimburse the said $1800 paid by them. That *if* Hutchinson gave a receipt and release, it was a fraud on complainants, and the railroad company were cognizant of it, and cannot lawfully set up the release as a discharge.

The bill prays, that defendants may be decreed to account to complainants for the $1800, and for general relief.

The demurrer must be sustained—

1st. Because this court has no jurisdiction of the case, as stated in the bill.

2d. Because the bill is multifarious.

3d. Because there is no equity in the bill.

1st. The court has no jurisdiction of the case, as stated in the bill. The complainant either has no remedy, or, if he has one, has not resorted to it.

The assured could only recover against the railroad company on the ground that the fire was accidental and caused by their negligence, and that it was so is charged in this bill. But this was exactly the risk which the insurance company took, and for which they received the premium, as stated in the bill. The insurance company agreed to indemnify the assured against all damages or loss which he might sustain. If he sustains a loss which he need not have done, by reason of his failure to prosecute a party liable, the company may, perhaps, resist payment on that ground, but he must first establish the liability of the railroad company. This liability is fixed and absolute in Massachusetts, and other states, by act of legislature, and therefore the insurance company are held to be subrogated in such cases to the rights of the assured after paying him the amount due on the policy, and they may maintain an action at law in the name of the assured. But, in New Jersey, and other states, where there is no act making the company absolutely liable, the amount and extent of the liability to the assured, as well as the fact, must be ascertained before the insurer can claim to be subrogated to his rights.

If the assured has released an uncertain liability, and this is a bar, no injustice is done the insurance company—this was the risk they took. And if they have paid the assured when there was no necessary loss, and when not liable, it was their own mistake; their remedy is by an action on the case against him to recover back money paid by mistake. There is no privity between the railroad company and the insurance company, and no subrogation can give the insur-

ance company a right the assured does not possess. *Suppose the railroad company, instead of paying a part and getting a release, had paid the whole and obtained a release, the case would not be altered at all,* yet it would not then be insisted that the insurance company, who had paid the policy, could recover it back from the assured by filing a bill against the railroad company, who had already paid *the whole loss.* If the railroad company were not liable for the fire to the assured, of course they are not liable in this action. If they are liable, the bill states that they satisfied the liability, and have been released by the party to whom they were liable.

If the insurance company paid when there was no loss, (this is the inference from the bill,) then the remedy is an action at law to recover from the assured money paid by mistake.

The payment of $2000 to Hutchinson by the company, is a bar to any right of recovery by Hutchinson against the company, as much as if a judgment had been obtained or an award made for the amount, and Hutchinson had received it either under the execution or award.

Hutchinson could, therefore, recover nothing more; nor can the insurance company, for they are entitled only to the rights and remedies of Hutchinson. If the release then be valid, the insurance company has no claim upon the railroad company.

If, on the other hand, there is fraud, and this release is invalid, the insurance company has a right of action at law, in the name of Hutchinson against the railroad company, to which the release is no bar. *Hart* v. *Western R. Co.,* 13 *Metc.* 99, 108, and cases cited on last page. In this case it was held, that whereas, under the Massachusetts statute, the owner of the house was entitled to recover absolutely of the railroad company, that if he received payment from the insurance company, they could use his name to recover the money back from the railroad company in an action at law. The present bill is filed against the party into whose rights

they allege they are subrogated, and whose name they should use in an action at law to recover the money, if they can recover it at all. *Phillips* v. *Clagett*, 11 *Mees. & Wels.* 84; Lord Abinger, bottom page 89; Parke, B., page 92, half way down.

The complainants' relief, therefore, being plain, complete, and adequate at law, equity will not entertain jurisdiction. 1 *Story's Eq. Jur.*, §§ 33, 49; *Mitford on Pl.*, ch. 2, *p.* 123; *Mosely*, 83; *Hoagland* v. *Delaware*, 2 *C. E. Green* 106, top of page 115; *Law* v. *Thorndike*, 20 *Pick.* 320; 1 *Johns. Ch.* 463; 4 *Johns. Ch.* 566.

There is nothing to give a court of equity jurisdiction. There is no prayer for discovery, and none needed for complainants' relief. The railroad company are not trustees. If they still held the money in their hands, then, upon the authority of *Randall* v. *Cochran*, 1 *Ves., sen.*, 98, and other cases based upon this case, this court would have jurisdiction. But the railroad company has paid the money over into the hands of Hutchinson. He is trustee. He is, therefore, within the jurisdiction of this court. He may be made to account. He falls directly within the principle of the cases where, though a court of law might have jurisdiction, and an assumpsit be maintained against the trustee for moneys he had received, yet equity retains the case, having concurrent jurisdiction. *Varet* v. *N. Y. Ins. Co.*, 7 *Paige* 567; *Hart* v. *Western R. Co.*, 13 *Metc.* 107; *N. Y. Ins. Co.* v. *Roulet,* 24 *Wend.* 505; 1 *Eden* 130; 1 *Younge & Coll.*, *Exch.* 500.

2. The bill is multifarious.

Neither the parties nor the subject matter are properly joined. The bill charges that complainants were subrogated into the rights of Hutchinson, and have a right to proceed on his claim. . Yet the bill is filed against *him,* and he is charged as holding the $1800 paid him by the insurance company, as well as the $2000 paid him by the railroad company, in trust for complainants. At the same time the

railroad company are charged with holding the whole amount of damages incurred, in trust for complainants from the time of their payment of the $1800; and an account is prayed against both defendants for the $1800. The positions are inconsistent with one another. The complainant has adopted a wrong course in the very frame of the bill, by uniting distinct matters against different defendants.

3. There is no equity in the bill.

The railroad company have made satisfaction to Hutchinson, and are not liable, therefore, to the insurance company. *Propeller Monticello* v. *Mollison*, 17 *How.* 155.

The clear distinction is, that where the party by whose negligence the loss has occurred, has not paid over the money to the assured, the insurers who paid the loss under the contract of insurance, are subrogated to the rights of the assured, and may bring an action in his name at law, or may maintain bill in equity in their own name. But where such loss has been paid to assured, then the action is by bill in equity against the assured, or assumpsit for money had and received.

Here the money is paid. This bill should, therefore, be dismissed as to the railroad company.

In *Randall* v. *Cochran*, 1 *Ves.* 98, and *White* v. *Dobinson*, 14 *Sim.* 273, the money had not been paid over; it was still in the hands (in the latter case) of the party doing the damage, and restrained by bill from being paid over to party injured, the insurer having before then paid the amount due under his contract of insurance. See also *Garrison* v. *Memphis Ins. Co.*, 19 *How.* 312.

See also, 37 *Ill.* 333; 8 *Johns. R.* 246; 16 *Wend.* 397; 5 *Paige* 285.

If the assured receives payment from the insurance company first, and afterwards receives payment from some person primarily liable, the sum received by the assured is in the nature of salvage, which he holds as trustee for the underwriters who had paid the loss. But, in such case, this

is no subrogation, for the assured has no rights left against the party primarily liable into which the assurer can be subrogated; but the remedy is against the trustee who holds for him. *Ætna Fire Ins. Co.* v. *Tyler*, 16 *Wend.* 397; *Angell on Insurance*, § 66.

There can be no subrogation unless there be a debt, unless there be a sum certain, as in case of advances by a consignee, or a policy on the life of the debtor. The fact that the assured might have had an action for damages against the company when the result was uncertain, does not subrogate the insurer into any right at all after this right of action is compromised by the party having it; and if he is substituted into any right at all, it is only the right to bring the action in the name of the assured, which was the only right the assured ever had against the railroad company.

The rule is laid down by Phillips—" When the insurable interest consists of a debt due to the assured, as in case of advances made by a consignee, or a policy on the life of a debtor, the assured is bound, no doubt, to assign to the underwriters his debt or his insurable interest, whichever it may be, in case of its being proved a total loss." 2 *Phil. on Ins.* 282; *Angell on Ins.*, (2*d ed.*,) *p.* 118, and note.

So, if a policy of insurance should be made in the name of an agent or trustee, and a loss should occur, and the agent or trustee should refuse to sue thereon, a bill for relief, suggesting these facts, and making the agent or trustee and the underwriters parties, would be demurrable, because the proper remedy is at law; for, on any such policy, if made in the name of an agent for the benefit of the principal, the principal may sue in his own name. *Story's Eq. Pl.*, § 480; *Dhegetoft* v. *London Assurance Co., Mosely* 83; *Mitford's Eq. Pl.*, 123; *Motteux* v. *London Assurance Co.*, 1 *Atk.* 547.

There is no privity whatever between the railroad company and the insurance company. The railroad company had the perfect right to compromise a doubtful claim of damages for an accidental fire, and the receipt and release of

the party claiming is an absolute bar to any claim, legal or equitable, after the money is paid. The bill states no case of fraud; but, on the contrary, does not state that a release was given, but simply that *if* it was given, it was a fraud; but if the inference be that a release was given, the circumstances as stated in the bill disprove any fraud in the transaction. There is no charge of fraud such as to justify the interference of a court of equity. The railroad company paid fifty per cent. to a party who charged that his property was destroyed by fire occasioned by their negligence, as a compromise of a doubtful claim. They are in precisely the same position as if they had paid the whole $4000, which they certainly had a right to do. More, they are in precisely the same position as if a verdict and judgment had been obtained and given for the $4000. True, the assured was indemnified by the policy only against "*a loss he might sustain.*" And, if he first received $1800 from the insurance company, and subsequently the full amount by verdict and judgment and execution from the railroad company, then the insurance company paid the $1800 under a mistake. It may be that the fire did not take place from any cause which invalidated the insurance, and if so, that matter can be fully investigated by the appropriate remedy—an action on the case to recover money paid by mistake.

A person is not properly a party to a suit between whom and the plaintiff there is no proper privity or common interest; but his liability, if any, is to another person. And there is no such collusion or fraud charged as would except this case from the general rule. *Story's Eq. Pl.*, § 227.

Complainant has no right to call upon the railroad company to answer his demand. *Story's Eq. Pl.*, § 513.

*Mr. J. Parker*, for complainants.

THE CHANCELLOR.

The bill states that the complainants insured the dwelling-house and store-house of the defendant, Hutchinson, against

116          CASES IN CHANCERY.

Monmouth Co. Fire Ins. Co. *v.* Hutchinson and C. & A. R. R. Co.

loss by fire, to the amount of $1800, and while so insured the buildings were destroyed by fire on the 5th day of March, 1866; that the value of the buildings destroyed was $4000; and that the complainants, on the 9th of May, 1866, paid to Hutchinson $1800 for his loss. The bill further states that the fire was communicated to the buildings by sparks from the locomotives of the defendants, the Camden and Amboy Railroad Company, running on their road near the buildings, and that the fire was caused by the negligence of the company's servants; that the company was liable for the loss occasioned by the fire; that the complainants having paid to Hutchinson the insurance, were, to that amount, subrogated in his place in the claim against the railroad company, and entitled to recover it from them in Hutchinson's name; that the company, in November, 1866, knowing that the complainants had paid this insurance, settled the claim of Hutchinson with him, paid him $2000, in full for his damages, and Hutchinson released and discharged them from all further liability. The complainants claim that Hutchinson holds $1800 of the amount received in trust for them, and is bound to account to them for it; that the settlement between the defendants, and the release and discharge, was a fraud on the complainants, and cannot be lawfully set up against them. The prayer of the bill is, that the defendants may be decreed to pay to the complainants the sum paid by them to Hutchinson, with interest; and to this is added the general prayer.

The cause of demurrer assigned in the demurrers filed, is want of equity in the bill; but in addition to this, on the argument, the defendants urged and assigned *ore tenus* as a ground of demurrer, that there is a misjoinder; that the right of action, if any, against Hutchinson is in equity, and against the railroad company at law, and that both defendants could not be joined, either in law or equity.

It is settled, and was not disputed on the argument, that if the complainants paid Hutchinson for a loss by fire, occasioned by the fault of the railroad company, and afterwards

Hutchinson received the amount from the railroad company in satisfaction of his damages, he holds it in trust for the insurers, and they may recover it from him by suit in equity. 2 *Phillips on Ins.*, §§ 1723, 1734; *Blauwpot* v. *Da Costa*, 1 *Eden* 130; *Randall* v. *Cochran*, 1 *Ves.*, *sen.*, 98; *Varet* v. *N. Y. Ins. Co.*, 7 *Paige* 567.

It is also settled, that if the railroad company had not paid Hutchinson his damages, or had paid them to him, knowing that he had received the amount insured from the complainants, that they are liable to the complainants in a suit at law, which they have the right to bring in the name of Hutchinson, without his consent, to repay them the damages to the amount of the sum paid by them, and that a release by Hutchinson would be no defence to such suit. *Hart* v. *The Western Railroad Co.*, 13 *Metc.* 99; *Tyler* v. *Ætna Fire Ins. Co.*, 16 *Wend.* 397; *Gracie* v. *N. Y. Ins. Co.*, 8 *Johns.* 245; *Timan* v. *Leland*, 6 *Hill* 237; 2 *Phillips on Ins.*, § 1711.

But these two remedies cannot be pursued in one suit, and neither defendant is a proper or necessary party to a suit against the other; and in no way are they jointly liable, so that a decree may be made, or a judgment given against both; and were there no other prayer than that they be decreed to pay the money to the complainants, the demurrers would be sustained for the misjoinder. But the prayer for general relief will entitle the complainants to any equitable relief warranted by the facts set out in the bill. The settlement by the railroad company with Hutchinson, after they knew that he had received the amount of the insurance, was a fraud upon the complainants, and the release given to them would be void for the fraud. Courts of equity have, peculiarly, cognizance of matters of fraud, and have jurisdiction over instruments affected by fraud, and will declare them void on that account; and this, even although the fraud is such as might be proved at law, so as to avoid the effect of the instrument. The release stated in the bill, if given under the circumstances there stated, is void as against the claim of the complainants, so far as the amount paid by

them is concerned, and it is void for fraud, and they have the right to have it declared void before commencing a suit in the name of Hutchinson against the railroad company. In a suit for that purpose, which must be brought against the company who hold the instrument, Hutchinson is a proper, if not a necessary party. He participated in the fraud and received the benefit of it.

The demurrers must, therefore, be overruled. The complainants were permitted to amend their bill at the argument, on the terms that the costs of the demurrers, if they should be overruled, should abide the event of the suit.