PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, AS SUBROGEES OF LEOLA NIXON AND WARREN NIXON, PLAINTIFF, v. NEW HAMPSHIRE INSURANCE COMPANY AND FIREMAN'S FUND INSURANCE COMPANIES, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 6, 1979.

*Mr. John P. Pieroni* for plaintiff (*Messrs. Enright, Porter & Leslie,* attorneys).

*Mr. Henry A. Larner* for defendant New Hampshire Insurance Company (*Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum,* attorneys).

*Mr. C. Kennon Hendrix* for defendant Fireman's Fund (*Mr. Roy D. Cummins,* attorney).

GIBSON, J. S. C. This motion for summary judgment involves a determination of the subrogation rights of an insurance carrier under § 9 of the New Jersey Automobile Reparation Reform Act, *N. J. S. A.* 39 :6A–9. Reimbursement is being sought for personal injury protection (PIP) benefits paid and to be paid as a result of an accident involving plaintiff's insured which occurred prior to January 1, 1975 but where benefits accrued both before and after that date. Since the statute has been held to terminate subrogation rights after December 31, 1974,[1] the question thus raised is whether the benefits accruing thereafter may properly be included in this claim. For the reasons to be stated, it is the opinion of this court that they cannot.

The material facts are not in dispute and for the present purposes[2] may be briefly stated as follows: Plaintiff's insured was involved in a two-car accident on September 30, 1973, as a result of which the driver died and her two passengers

---

[1] *Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Empl. Ins. Co.,* 136 *N. J. Super.* 491 (App. Div. 1975) ; aff'd o.b. 72 *N. J.* 348 (1977).

[2] These facts are more fully set forth in a prior opinion of this court involving an unrelated issue bearing the same title as the within action and reported at 164 *N. J. Super.* 184 (Law Div. 1978).

o

were seriously injured. The insurance which plaintiff provided for the vehicle being driven included New Jersey no-fault benefits pursuant to *N. J. S. A.* 39:6A–1, *et seq.* Substantial PIP benefits were paid commencing in about December 1973 and continuing up to the present, the current total of which has been estimated to exceed $125,000. Based on the above, plaintiff seeks reimbursement from defendants. Although neither has contested liability, both carriers contend that plaintiff is entitled to recover only those benefits paid up to and including December 31, 1974. Plaintiff, on the other hand, asserts that the date of the accident alone determines eligibility for recovery under *N. J. S. A.* 39:6A–9 and that therefore all benefits, regardless of when paid, are properly the subject of subrogation.

The subrogation provisions of the No-Fault statute are contained at *N. J. S. A.* 39:6A–9.

Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative.

The last sentence of the above section was not included when the statute was originally passed but was added on May 4, 1972[3] at the behest of the insurance industry. In persuading the Legislature to insert a cut-off date the industry "expressed reluctance as to the economic benefit of subroga-

---

[3] *L.* 1972, c. 203, § 7.

tion in that it resulted in the shifting of dollars and papers among insurers with little to be gained." *Iavicoli, No-Fault and Comparative Negligence in New Jersey,* at 117 (1973). The two-year period which was retained was solely for the purpose of compiling statistics for the insurance rate-making process. *Ibid.* Although it has been pointed out that a corollary of the subrogation right is the statutory mandate against double recovery by the injured person[4] and also that different principles may apply when out-of-state vehicles are involved, *Cirelli v. Ohio Cas. Ins. Co.,* 133 *N. J. Super.* 492 (Law Div. 1975) ; aff'd as mod. 72 *N. J.* 380, 387 (1977), these principles do not appear to have played a part in the imposition of the two-year cut-off. The apparent thinking of the insurance industry and the Legislature was that losses incurred due to PIP payments would eventually equal out among insurers and that by extinguishing the subrogation remedy, costs of litigation would decrease and the saving be passed on to the consumer in the form of lower premiums. *Marriner v. Koenig,* 148 *N. J. Super.* 363, 365 (Law Div. 1977).

Unfortunately, the subrogation provision of the no-fault law has received little attention by our courts. What case law does exist does not resolve the question raised by the facts presented here. The closest holding factually is found in *Marriner v. Koenig, supra,* where, as here, there was a pre-January 1, 1975 accident with PIP benefits accruing both before and after that date. In that case, however, the defendant was a railroad. The court saw that as a critical difference and denied defendant's motion for summary judgment, ruling that since the railroad was self-insured, it was not entitled to the cut-off benefits of *N. J. S. A.* 39 :6A–9.[5] The

---

[4]*N. J. S. A.* 39 :6A–12 ; see *Eckmeyer v. Colburn,* 138 *N. J. Super.* 164 (Law Div. 1975).

[5]Although not articulated by the court, it would appear that the railroad's motion was based on the same basis as urged by the defendants here.

issue presented here was therefore never reached. *Accord, Newsome v. Hertz Corp.*, 164 *N. J. Super.* 141 (App. Div. 1978).

The leading case on the subject, and that urged by plaintiff as "resolving" the issue, is the Supreme Court's ruling in *Cirelli v. Ohio Casualty Insurance Co., supra.* That case also involved a pre-January 1, 1975 accident. However, since the accident occurred in New York, the primary issue litigated was whether that fact limited the rights and obligations of a New Jersey insurer. Although subrogation for no-fault benefits was clearly involved, the issue presented here was again never raised. However, in *dictum* the court referred to the termination date of *N. J. S. A.* 39:6A–9 and noted that it provides that it shall be inoperative after December 31, 1974. "This has been held to mean that subrogation rights have been extinguished with respect to accidents occurring after that date. *Pennsylvania Mfrs. Assn. Ins. Co. v. Government Emp. Ins. Co.*, 136 *N. J. Super.* 491, 498 (App. Div. 1975); aff'd o. b. this day 72 *N. J.* 348." *Id.* 72 *N. J.* at 385.

Although it is not disputed that post-December 31, 1974 accidents do not qualify under *N. J. S. A.* 39:6A–9, this dictum can also be read to imply that, to qualify for subrogation, the benefits paid need only relate to an accident occurring prior to the above date. On the other hand, it is significant that the case cited by the *Cirelli* court does not support that position. *Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Empl. Ins. Co., supra.* In fact, the implication of the language in that case is to the contrary. For example, in referring to the statutory pattern of the no-fault law, the court indicated that subrogation for PIP payments "ends completely on January 1, 1975 * * *." This termination, according to the court, "refects the legislative intent to grant a subordinate and *temporary* role to intercompany subrogation." *Id.* 347 *N. J. Super.* at 498–499; emphasis supplied. It is difficult to read that case as supporting plaintiff's position.

When the case law that has been referred to is viewed against a background of the previously described legislative history, there does not appear to be any meaningful basis for concluding that subrogation rights should continue beyond the two-year period provided. As indicated, the underlying thrust of the no-fault law is to reduce the costs of insurance coverage and to pass along that saving to the consumer in the form of lower premium costs. Since the "shifting of dollars" produced by subrogation was determined to be counter-productive, the Legislature concluded that this right would be subordinate and temporary. *Iavicoli, supra; Pennsylvania Mfrs. Ass'n Ins. Co., supra* 136 *N. J. Super.* at 498. Also, since it is clear that the two-year period permitted was solely for rate-making purposes (*Eckmeyer, Jr., supra* 138 *N. J. Super.* at 169), it is difficult to see how continuing subrogation rights based on the accident alone would serve that purpose. A contrary rule in cases such as this one would permit subrogation rights to continue indefinitely.

It is the opinion of this court, therefore, that to the extent that plaintiff's claim herein includes benefits accrued and paid subsequent to December 31, 1974, said payments will not necessitate reimbursement by the defendants. Defendants' motion will accordingly be granted. No costs.