174 N.J. Super. 271 (1980)
416 A.2d 415
FRANK H. MELICK, PLAINTIFF,
v.
JAMES L. STANLEY, AND JAMES L. STANLEY, JR., DEFENDANTS.
Superior Court of New Jersey, New Jersey Superior Court, Law Division Cumberland County.
April 24, 1980.
*274 Robert P. Clark for plaintiff (Clark, Gertler & Hanna, attorneys).
Anthony D. Buonadonna for defendants (Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, attorneys).
MILLER, J.S.C.
This is a subrogation action filed in the name of Frank H. Melick by his insurance carrier Nationwide Mutual Insurance Company (Nationwide). At issue is whether Nationwide may recover PIP benefits from defendants in the amount of $10,739.75 representing medical expenses and related benefits paid to plaintiff under a policy of "no-fault" insurance issued in the State of Delaware. The pertinent facts are as follows:
On September 15, 1977 plaintiff sustained serious injuries as a result of a collision between the van he was driving and a septic tank truck owned by defendant James L. Stanley and operated by defendant James L. Stanley, Jr. The accident occurred in New Jersey. At the time plaintiff was a resident of Delaware and both defendants were residents of New Jersey.
Following the accident plaintiff instituted suit against defendants in the United States District Court for the District of New Jersey pursuant to 28 U.S.C.A. § 1332 seeking damages in the amount of $15,000 against each defendant for personal injuries, pain and suffering and medical expenses incurred as a result of the collision.
On or about November 14, 1978 the parties entered into a settlement agreement wherein plaintiff, in consideration of the sum of $18,500, executed a release of all claims against defendants. The federal action was dismissed several days later.
Plaintiff's insurer, Nationwide, was not a signatory to this release which provided in pertinent part that plaintiff released defendants:
... more particularly, but not in limitation, for personal injuries, permanent and/or temporary disability, medical and/or hospital expenses and any and all other incidental expenses and loss alleged [as a result of the aforesaid accident] ... [Emphasis supplied]
*275 In September 1979 this subrogation action was filed against the same defendants in the Superior Court of New Jersey, Law Division, seeking unspecified damages as a result of the September 15, 1977 motor vehicle accident.
In the belief that the instant suit sought recovery of the same damages which were the subject of the prior federal suit, defendants moved for summary judgment dismissing the complaint on the ground that the prior settlement and release barred any further action by plaintiff.
In opposition plaintiff acknowledged the prior release but pointed out that the instant suit was actually a subrogation action by Nationwide to recover medical expenses and related PIP benefits paid to plaintiff before the release was executed. Unlike New Jersey, Delaware law mandates subrogation rights for insurers which have paid PIP benefits to persons covered by insurance policies issued in accordance with Delaware's no-fault statute. Compare N.J.S.A. 39:6A-9 with 21 Del.C. § 2118(f). Nationwide's position as the real party in interest is that the prior release was for pain and suffering in plaintiff's personal action against defendants and that it could not affect Nationwide's subrogation rights against defendants for the medical expense and related PIP benefits paid to its insured. Nationwide further contends that defendants, through their insurance carrier, State Farm Mutual Insurance Company (State Farm) and the carrier's attorney, were aware of its subrogated interest in these PIP benefits prior to August 21, 1978. In addition, Nationwide cites its insured's answers to interrogatories propounded by defendants in the federal suit which indicated that plaintiff's medical and hospital expenses were being paid by Nationwide.
In response, defendants submitted the affidavit of a State Farm field claim specialist who was instrumental in the settlement of the federal suit. In his affidavit the claim specialist states that neither plaintiff's personal attorney nor Nationwide ever notified him of the existence of Nationwide's subrogation interest in the PIP benefits sought here. According to the claim specialist, the only subrogated interests discussed concerned a *276 claim for property damage to plaintiff's van in the amount of $1,679 which was paid by State Farm on February 5, 1979.
At the outset two issues are raised by the facts: (1) what are Nationwide's subrogation rights in New Jersey with respect to PIP benefits paid to its Delaware insured under a policy of no-fault insurance issued in Delaware, and (2) what effect does the release executed by plaintiff in the prior federal suit have on Nationwide's subrogation interests?
This is a suit filed in the name of a Delaware insured based upon subrogation rights arising from a policy of insurance issued in Delaware in accordance with that state's no-fault statute. In such a case our law provides that the rights and liabilities of the insurer under the policy and the statutory impact thereon must be determined by the law of the state where the contract of insurance was made, in this case Delaware. State Farm Mut. Auto. Ins. v. Simmons Estate, 169 N.J. Super. 133 (App.Div. 1979). This is in accord with the settled principles of conflicts discussed in Buzzone v. Hartford Acc. and Indem. Co., 23 N.J. 447, 457 (1957). Delaware's no-fault statute mandates insurance coverage for lost earnings and all reasonable and necessary medical and hospital expenses incurred by a covered party who has been struck by a motor vehicle. 21 Del.C. § 2118(a)(2). This includes coverage for expenses incurred as a result of accidents involving non-Delaware insureds in any state of the United States. 21 Del.C. § 2118(a)(2)d. By statute, insurers providing these benefits are subrogated to the rights and claims of the person to whom benefits are provided to the extent of the benefits paid. 21 Del.C. § 2118(f). Such subrogated rights are limited to the maximum amounts of the tortfeasor's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved. 21 Del.C. § 2118(f)(1).
In addition, the statute precludes any person eligible for no-fault benefits, other than an insurer in a subrogation action, from pleading or introducing into evidence in an action for damages against a tortfeasor, those damages for which compensation *277 is available from the covered party's insurer. 21 Del.C. § 2118(g). Furthermore, effective June 2, 1977, the Delaware statute was amended to prohibit an insurer from joining in an action by an injured party against a tortfeasor for recovery of any benefits paid by the insurer. 21 Del.C. § 2118(f)(4); amended by 61 Del. Laws C. 66. The practical effect of these provisions is to prohibit injured plaintiffs from attempting to recover compensation for medical expenses from alleged tortfeasors in automobile negligence actions. Garr v. Clayville, 71 F.R.D. 553, 555 (D.Del. 1976). Instead the statute mandates that the proper plaintiffs for such damages are insurers who are subrogated to the rights of the person for whom benefits are provided under 21 Del.C. § 2118(f). Id. at 555.
Accordingly, applying New Jersey conflicts of law principles, the Delaware subrogation statute must be given effect in the instant suit. It should be noted, however, that even if the conflict of law principles provided otherwise so that New Jersey law controlled the insurer's subrogation rights, the result would not be different.
As initially enacted, § 9 of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., prohibited insurers from exercising their subrogation rights except by intercompany arbitration. At the request of the insurance industry this section was amended on May 4, 1972 to cut off the insurers' subrogation rights after January 1, 1975. See L. 1972, c. 203, § 7. The apparent thinking of the Legislature and the insurance industry in imposing the cut-off date was that losses incurred due to PIP payments would eventually equal out among insurers. By extinguishing the subrogation remedy it was believed costs of litigation would decrease and that saving would be passed on to the consumer in the form of lower premiums. Prudential Property & Cas. Ins. Co. v. New Hampshire Ins. Co., 167 N.J. Super. 537 (Law Div. 1979).
The statutory bar against subrogation actions, however, has not been held to be absolute. In Newson v. Hertz Corp., 164 N.J. Super. 141 (1978), the Appellate Division held that N.J.S.A. *278 39:6A-9 would not bar an insurer from bringing a subrogation action against the self-insured owner of a truck since this was not a motor vehicle insured in accordance with the provisions of the New Jersey Automobile Reparation Reform Act. In an earlier decision our Supreme Court held that where the accident occurs outside New Jersey and a New Jersey vehicle and an out-of-state vehicle are involved, the predicate for preventing subrogation does not exist. Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387 (1977). Although Cirelli involved a pre-1975 accident so that the insurer's right of subrogation by intercompany arbitration still existed, the Supreme Court noted that this type of arbitration would not be feasible when out-of-state insurance companies were involved. In dictum the court also noted that the statutory bar against subrogation would not apply to out-of-state accidents with foreign vehicles which occurred after January 1, 1975.
In the instant case defendants' vehicle was a septic tank truck, clearly not within the definition of an automobile required to be covered by a policy of no-fault insurance under New Jersey law. See N.J.S.A. 39:6A-2(a). In addition, it was not a vehicle registered in New Jersey nor was it covered by a policy of no-fault insurance issued in this State. Therefore, following the reasoning in the Newson and Cirelli cases, Nationwide's subrogation interest would still be preserved even if Delaware law were not applicable.
This does not resolve all the issues before the court, however. The remaining issue concerns the effect of the release executed by plaintiff in the prior federal court action on Nationwide's subrogation rights in the instant suit. Again a conflicts question is presented as to whether New Jersey or Delaware law is determinative on the effect of the release.
The only case at all on point in New Jersey is Daily v. Somberg, 28 N.J. 372 (1958). Daily concerned two separate actions arising out of the same automobile accident in Ohio. One was a negligence action instituted against the owner and driver of the other motor vehicle in the United States District Court for the Southern District of New York. The second suit *279 was a medical malpractice action instituted in New Jersey against two New Jersey physicians who treated the plaintiff in this State for his injuries following the accident. The federal suit was settled when the plaintiff released the owner and driver from any and all claims against them arising out of the accident. The New Jersey physicians then claimed that this release also released them from any claims by the plaintiff as a result of their alleged malpractice. In rejecting this contention the Supreme Court noted that while Ohio law controlled the effect of the release with respect to the New York driver and owner (since the tort occurred in Ohio), it did not control the effect of the release with respect to the New Jersey physicians. Since the acts upon which the claim of medical malpractice was based occurred in New Jersey, the court held that New Jersey law determined the effect of the release. The Daily court then stated that under the facts of that case it was not the plaintiff's intention to release the New Jersey physicians from liability for their alleged malpractice.
In the instant case the alleged tort also occurred in New Jersey and thus, under Daily, New Jersey law is controlling as to its effect.
In earlier cases our courts have recognized the rule to be as follows:
... where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer, such release of the tortfeasor does not bar the right of subrogation of the insurer. 16 Couch on Insurance 2d § 61:97 (1966 ed.) (citing at footnote 4 Monmouth County Mut. F. Ins. Co. v. Hutchinson, 21 N.J. Eq. 107 (Ch. 1870); Fire Assoc. of Phila. v. Wells, 84 N.J. Eq. 484 (E. & A. 1915); Camden F. Ins. Ass. v. Prezioso, 93 N.J. Eq. 318 (Ch. 1922); Century Ins. v. Joachim, 17 N.J. Misc. 229 (Dist.Ct. 1939); Standard Accid. Ins. Co. v. Pellecchia, 15 N.J. 162 (1954)).
........
Where the tortfeasor, acting in good faith and without knowledge or notice of the insurer's payment and subrogation rights, settled with and obtained a full or general release from the insured, such settlement and release constituted a defense to the insurer's action against the tortfeasor for reimbursement. 16 Couch, at § 61:199.
See, Also, "Insurer's rights against released tortfeasor", 92 A.L.R.2d 142 (1963); 44 Am.Jur.2d 764, Insurance, § 1837.
*280 In the context of automobile insurance the rule in most jurisdictions which have passed on the issue is the same. Although some of the cases noted the existence of the doctrine prohibiting the splitting of a cause of action for damages, this doctrine was either distinguished under the particular facts or held inapplicable to an insurer's subrogation interest. Hardware Dealer's Mut. Fire Ins. Co. v. Farmer's Ins. Exchange, 4 Wash. App. 49, 480 P.2d 226 (Ct.App. 1971) tortfeasor's insurer put on notice of subrogation interest for medical expenses paid to other carrier's insured waived right to raise defense of splitting cause of action by failing to raise it in timely manner); Southern Pacific Transp. Co. v. State Farm Mut. Ins. Co., 480 S.W.2d 59 (Tex.Civil App. 1972) (where settlement effected between insured and tortfeasor without notice to insurer, insurer had no opportunity to intervene to protect its subrogation interest and was not barred from recovery under either res judicata or doctrine of splitting causes of action); Travelers Indem. Co. v. Vaccari, 310 Minn. 97, 245 N.W.2d 944 (Sup.Ct. 1976) (tortfeasor waives his right to invoke rule against splitting a single cause of action where tortfeasor has notice of insurer's subrogation claim prior to settling with the insured).
More specifically, the Supreme Court of Illinois recently reversed a line of Illinois cases to hold that an unlimited release executed by an insured party for consideration, which did not specifically include an amount designated as covering the insurer's subrogation interest prior to the release, does not bar a subsequent subrogation action by an insurer's subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer subrogee's interest prior to the release. Home Ins. Co. v. Hertz Corp., 375 N.E.2d 115, 71 Ill.2d 210, 16 Ill.Dec. 484 (Sup.Ct. 1978). See also, Vigilant Ins. Co. v. Bowman, 128 Ga. App. 872, 198 S.E.2d 346 (Ct.App. 1973); State Farm Mut. Ins. Co. v. Farmer's Ins. Exchange, 27 Utah 2d 1966, 493 P.2d 1002 (Sup.Ct. 1972); Sentry Ins. Co. v. Stuart, 439 S.W.2d 797 (Ark.Sup.Ct. 1969); Hartford Acc. and Indem. Co. v. Elliot, 32 Ohio App.2d 281, 290 N.E.2d 919, (Ct.App. 1972) and Davenport v. State Farm Mut. Auto. Ins. Co., 81 Nev. 361, 404 P.2d 10 (Nev.Sup.Ct. 1965) (subrogation interest in proceeds of settlement *281 with tortfeasor). But see Louisiana Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 348 So.2d 1311 (La. App. 1977), and State Farm Mut. Ins. Co. v. Mid-Century Ins. Co., 147 Ind. App. 258, 259 N.E.2d 424 (App.Ct. 1970).
The majority rule as set forth in the Illinois Supreme Court case cited above, i.e., that a release in favor of a tortfeasor made with knowledge of a previous claim payment by the settling insured's insurance carrier amounts to a fraud upon the insurer's subrogation rights against the tortfeasor, 375 N.E.2d at 118, seems to be the proper one.
Resolution of this summary judgment motion turns on the question of State Farm's notice or knowledge of Nationwide's subrogation interest for medical expenses prior to the execution of the release in the federal court action. Defendants contend that State Farm was never formally apprised of Nationwide's subrogation interest in these medical benefits. In his affidavit State Farm's Claim specialist, J.M. Loftus, stated that the only notice he received concerning subrogation was Nationwide's claim for property damage to plaintiff's van. Copies of Nationwide's correspondence submitted by defendant indicate that two form letters seeking reimbursement for Nationwide's subrogation interest in plaintiff's property damage claim alone were sent by Nationwide's claim agent William L. George.
The first letter, which is not dated, seeks reimbursement of $1,725 for property damage to plaintiff's vehicle. In the second form letter, dated January 31, 1979, the subrogation claim is reduced by a $50 salvage value to $1,679. No mention is made in either letter of Nationwide's subrogation interest in medical expenses. Defendant also submitted a handwritten memo from J.M. Loftus to William L. George, dated August 14, 1978, which states in pertinent part:
We have concluded our investigation and have determined your assured to be 25% negligent.
Without prejudice we offer 75% of your net subro.
Please advise.
In the space provided for reply the following handwritten and undated statement appears above the stamp of William L. George:

*282 Nationwide Insurance Co. will accept your offer of 75% for full settlement of our sub claim.
The final notation on the memo, which is dated 2/5/79, states:
Bill. 75% of your total subro. Matter is concluded.
This final notation appears to be written in the same handwriting as the initial memo from J.M. Loftus.
Plaintiff's attorney contends, however, that State Farm was notified of Nationwide's subrogation interest "at least as early as August 21, 1978 and most definitely prior to that date." In support of this contention he cites plaintiff's answers to interrogatories propounded in the federal court action which indicated that all his medical bills were paid as received by Nationwide. In addition, a separate schedule of medical bills is attached to the answers.
A release procured by a tortfeasor, knowing that the insured has already received payment from the insurer, has generally been held not to constitute a defense to the insurer's action against the wrongdoer to enforce its right of subrogation. 6A Appleman on Insurance § 4092 at 246 (1972). For New Jersey cases, see Monmouth Cty. Mut. Fire Ins. Co. v. Hutchinson, 21 N.J. Eq. 107 (Ch. 1870); Fire Ass'n of Phila. v. Wells, 84 N.J. Eq. 484 (E. & A. 1915); Camden Fire Ins. Ass'n v. Prezioso, 93 N.J. Eq. 318 (Ch. 1922); Century Ins. Co. v. Joachim, 17 N.J. Misc. 229 (D.Ct. 1939); Standard Acc. Ins. Co. v. Pellecchia, 15 N.J. 162 (1954). And see Service Fire Ins. Co. v. Nicosia, 38 Del. Co. 200 (Pa. 1951) (collision insurer's letter stating that it had insured's claim for adjustment not sufficient notice of insurer's subrogation interest); Bernhard v. Delluaitante, 5 Cal. App.2d 585, 43 P.2d 338 (D.Ct.App. 1935) (collision insurer failed to state in letter that it had paid insured's claim or that subrogation or assignment had taken place); Allstate Ins. Co. v. Dye, 113 Ohio App. 90, 170 N.E.2d 862 (Ct.App. 1960) (notice before settlement that insured had made claim to insurer for auto damage without notice that payment had been made and a subrogation receipt issued precludes insurer from seeking subrogation from tortfeasor).
The rule in New York appears to be somewhat different. Earlier decisions in that state have held that where the settling *283 tortfeasor knew or possessed information which reasonably pursued would have given him knowledge of the injured party's insurer's subrogation rights, subrogation is not precluded after settlement between the injured party and the tortfeasor. Neuss, Hesslein & Co. v. Canal St. Realty Corp., 9 Misc.2d 903, 168 N.Y.S.2d 579, app.dism. 13 App.Div2d 760, 217 N.Y.S. 1017 (Sup.Ct. 1957) (tenant's insurer's claim against landlord for water damage); Camden Fire Ins. Ass'n v. Bleem, 132 Misc. 72, 227 N.Y.S. 746 (City Ct.Buffalo 1928) (widespread use of auto should have put defendant on notice of injured party's insurer's subrogation claim), and Hamilton Fire Ins. Co. v. Gregor, 246 N.Y. 162, 158 N.E. 60 (Ct.App. 1927) (defendant knew insured's carrier had paid him part of his damages from examination of insured).
More recent cases, however, speak in terms of some type of formal notice from the injured party's insurer respecting its claim for subrogation rights under the insurance policy and notifying the defendant and/or his insurer that it is seeking reimbursement for benefits provided. Southern Pacific Transport Co. v. State Farm Mut. Ins. Co., supra, 480 S.W.2d at 63; State Farm Mut. Ins. Co. v. Farmer's Ins. Exchange, supra, 493 P.2d at 1002; Sentry Ins. Co. v. Stuart, supra, 439 S.W.2d at 798; Hartford Acc. and Indem. Co. v. Elliot, supra, 290 N.E.2d at 920; Hardware Dealer's Mut. Fire Ins. Co. v. Farmer's Ins. Exchange, supra, 480 P.2d at 226; Davenport v. State Farm Mut. Auto. Ins. Co., supra, 404 P.2d at 11.
It is well settled that subrogation is not an absolute right, but rather is applied under equitable standards that will accomplish justice between the parties and one asserting the right cannot thereby profit from his own wrong, but must himself be without fault. Standard Acc. Ins. Co. v. Pellechia, supra, 15 N.J. at 171-172.
In the case at bar the only notice that defendant or his insurer had concerning medical expenses was that plaintiff's insurer had paid them and this fact was only made known in plaintiff's answers to interrogatories. In its two formal subrogation notices Nationwide failed to make any mention of medical expenses. *284 Furthermore, in his correspondence with State Farm's adjuster, Nationwide's claims agent accepted 75% of the plaintiff's property damage claim in "full settlement of (Nationwide's) subrogation claim." Now, one year after settlement in the federal court action, Nationwide suddenly steps forward with its claim for subrogation for medical expenses paid to its insured.
In this particular factual setting the equities lie with defendant. The accident occurred on September 15, 1977 and settlement occurred on November 14, 1978, more than one year later. Nationwide, through inadvertence or mistake, failed to notify defendant or State Farm during this 14-month period that it had a subrogation interest in the medical benefits provided to its insured. Plaintiff's answers to interrogatories did not, under the circumstances, put defendant or State Farm on notice of Nationwide's subrogation interest. Nationwide should not be allowed to sleep on its rights when it had adequate opportunity to protect itself.
However it may still be able to proceed against its own insured for destroying its right of subrogation by settlement with the tortfeasor. See Rogers v. American Fid. and Cas. Co., Inc., 52 N.J. Super. 254 (App.Div. 1958).
Defendants' motion for summary judgment is granted.